**RESPA OF PENNSYLVANIA, INC., Appellee,**

v.

**Robert SKILLMAN and Joyce Skillman, Appellants.**

Superior Court of Pennsylvania.

Argued Oct. 31, 2000.

Filed Jan. 30, 2001.

Jeffrey M. Goldstein, Washington, for appellant.

J. Brian Johnson, Allentown, for appellee.

Before JOYCE, J., OLSZEWSKI, J. and CIRILLO, President Judge Emeritus.*

OPINION BY OLSZEWSKI, J.:

¶ 1 Robert and Joyce Skillman appeal the trial court order dated December 1, 1999, granting a permanent injunction ordering them to cease and desist using two telephone numbers related to their realty business and to transfer those numbers to RESPA of Pennsylvania, Inc. ("RESPA"). We affirm.

¶ 2 On October 11, 1990, appellants and RESPA, which is a franchisee of sub-franchisor of Realty Executives International, Inc., entered into a Franchise Agreement authorizing appellants to open a Realty Executives real estate office in Bucks County, Pennsylvania. After renewing the agreement in 1995, the franchise relationship broke down in 1998 and resulted in RESPA terminating the franchise after appellants breached the Agreement. Appellants subsequently established a new real estate business under the name "Realty Excel."

¶ 3 On May 27, 1999, under the provisions of the Agreement, RESPA sued appellants to enjoin appellants' continued use of the Realty Executives' "System" and the registered trade name "REALTY EXECUTIVES." On June 18, 1999, the trial court granted RESPA a preliminary in-

---

* P.J.E. Cirillo did not participate in the consid- eration or decision of this case.

junction against appellants. The Order, in pertinent part, enjoined appellants from:

2. ... using the name and mark "REALTY EXECUTIVES" or any combination of words confusingly similar thereto or suggestive thereof, or any trade names, trade marks, service marks, certification marks, color schemes and patterns, slogans, designs, signs, or emblems of the System, or identified with the System, or similar thereto, or suggestive thereof;

3. ... using all exterior and interior signs and advertising matter, stationary, forms, or any other articles which display such work, including the trade names, trade marks, service marks, certification marks, color schemes or patterns, slogans, designs, signs, or emblems, of the System, or identified with the System, or similar thereto, or suggestive thereof;

4. ... holding themselves out to the public, in any way, as being a member of the System or a franchisee of RESPA of Pennsylvania, Inc. ...

Trial Court Order, 6/18/99, at 1–2.

¶ 4 On September 22, 1999, RESPA requested that a permanent injunction be issued against appellants, and the trial court set the hearing date for November 22, 1999. On November 12, 1999, RESPA filed a Petition for Contempt against appellants seeking appellants' compliance with the preliminary injunction order.

¶ 5 On November 22, at the permanent injunction hearing, RESPA withdrew its petition for contempt and the trial court proceeded to hear evidence on permanent injunction matter. This included evidence on appellants' continued use of two telephone numbers after the preliminary injunction was issued [1]. The first telephone number is listed in three different places in the Lower Bucks County telephone directory under the name "Realty Executives." On December 1, 1999, the trial court issued an opinion and final decree

granting the permanent injunction against appellants. The injunction specifically ordered appellants to cease and desist using the two telephone numbers and ordered them to transfer the numbers to RESPA. *See* Trial Court Order, 12/1/99, at 1. This timely appeal followed.

Appellants raise the following issues:

1. Whether the Skillmans are entitled to continue their former Realty Executives telephone numbers, (215) 579–4200 and (888) 579–4200, in connection with their new Realty Excel business, when the language of the Realty Executives Franchise Agreement contains no requirement that the Skillmans transfer their telephone numbers to the franchisor upon termination of the franchise.

2. Whether sufficient evidence existed to support the conclusion that the Skillmans' use of their Realty Executives telephone numbers in connection with their new Realty Excel business would cause consumer confusion, when the only pertinent evidence adduced was the testimony of RESPA's president, who opined that no such confusion existed.

3. Whether, the proper remedy was to transfer the numbers to the franchisor, even though instituting a split-interrupt service would have permitted callers to choose whether to contact a Realty Executives office or the Skillmans' new business, thus alleviating potential consumer confusion and mitigating the harm to the Skillmans arising from the deprivation of their longstanding telephone numbers.

4. Whether the trial court erred in permanently enjoining the Skillmans' use of the numbers in an order dated December 1, 1999, when the underlying hearing had been noticed only for the purposes of finalizing an earlier preliminary injunction order that made no reference to telephone numbers and of adjudicating the Skillman's liability for attorneys' fees and costs.

---

**1.** The telephone numbers at issue are: (215)579–4200 and (888)579–4200.

Appellants' brief, at 2. Because appellants' final claim is one of procedure, we address it first before addressing their substantive claims.

■■■ ¶ 6 Appellants contend the trial court erred in permanently enjoining their use of the two numbers at the permanent injunction hearing due to a lack of notice. Specifically, appellants argue the permanent injunction hearing had been noticed only for the purpose of finalizing an earlier preliminary injunction order that made no reference to telephone numbers. We disagree.

> Our scope of review on an appeal from a final decree upholding the grant of a permanent injunction is limited. We are bound to accept the chancellor's findings of fact and accord them the weight of a jury verdict where supported by competent evidence. We are not, however, bound by conclusions drawn from those facts or by legal conclusions and may reverse for abuse of discretion or error of law.

*Palladinetti v. Penn Distributors, Inc.,* 695 A.2d 855, 857 (Pa.Super.1997). With these standards in mind, we address appellants' claims.

■■■ ¶ 7 The United States Supreme Court set out the classic requirements of adequate notice in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (citations omitted.):

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.

Where notice is ambiguous or inadequate to inform a party of the nature of the proceedings against him or not given sufficiently in advance of the proceeding to permit preparation, a party is deprived of due process. *Graham v. Sawaya,* 632 P.2d 851 (Utah 1981). We adopt these standards and apply them to the record in this case. Therefore, we conclude that appellants received constitutionally sufficient notice.

■■■ ¶ 8 On June 18, 1999, the trial court granted RESPA's request for a preliminary injunction. On September 22, 1999, after RESPA requested a permanent injunction be issued, the trial court scheduled a hearing on this matter for November 22, 1999. This provided appellants two months notice to prepare. Appellants knew the hearing was for a permanent injunction and would include any issues that concerned the provisions and enforcement of the preliminary injunction. Although the telephone numbers were not specifically enumerated in the preliminary injunction order, appellants should have been prepared to discuss them because they fall within the ambit of its provisions as will be discussed below.

¶ 9 Appellants' argument that a Petition for Contempt filed on November 12, 1999, which included reference to the telephone numbers, was their first notice is unavailing. While appellants are correct that they are afforded 20 days to answer that contempt petition, we note that a Petition for Contempt and the subsequent hearing accompanying it does not prohibit the court from deciding what is to be included in a permanent injunction at a scheduled Permanent Injunction Hearing. Appellants cite no authority for this proposition and our research revealed no such authority exists. Moreover, RESPA withdrew the Petition for Contempt at the Permanent Injunction Hearing. Thus, appellants did not need the 20 day period to prepare a brief on why they were not in contempt. Further, if RESPA had never filed a Petition for Contempt that referenced the phone numbers, appellants still would have been required to be prepared to discuss

them at the scheduled Permanent Injunction Hearing.

¶ 10 It is clear from the record that appellants had a full hearing in which they were offered an opportunity to introduce evidence on their own behalf, cross-examine opposing witnesses, and make argument. Since appellants were provided notice, a full hearing, and an opportunity to be heard, their due process rights were not violated. Therefore, we find no abuse of discretion or error of law.

¶ 11 Appellants next contend they are entitled to continue to use their former Realty Executives telephone numbers in connection with their new Realty Excel business because the language of the Realty Executives Franchise Agreement contains no requirement that they transfer their telephone numbers to the franchisor upon termination of the franchise.

■■■ ¶ 12 Before we address the merits of appellants' claim, we note that appellants do not dispute the validity of the trial court's granting of the permanent injunction. Rather, they dispute the trial court's finding that the two telephone numbers fall within the Franchise Agreement's provisions of Paragraph 7. Thus, we need not discuss the factors necessary to grant a permanent injunction.

> The interpretation of a contract is a question of law. In deciding an issue of law, an appellate court need not defer to the conclusions of the trial court. When the language of a contract is unambiguous, we must interpret its meaning solely from the contents within its four corners, consistent with its plainly expressed intent. We may not consider extrinsic evidence unless the terms are ambiguous. A contract is not ambiguous merely because the parties do not agree on its construction.

*Seven Springs Farm Inc., v. Croker,* 748 A.2d 740, 744 (Pa.Super.2000) (citations omitted). Contractual language is ambiguous "if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Madison Construction Company v. Harleysville Mutual Insurance Company.,* 557 Pa. 595, 735 A.2d 100, 106 (1999) This question is not to be resolved in a vacuum. *See id.* "Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts." *Id.*

■■■ ¶ 13 The pertinent part of the Agreement's Paragraph 7 provides:

> [Appellant] agrees upon any such termination to cease and refrain from holding [appellant] out to the public in any way as a member of the System as a Franchisee, or operator of a *"REALTY EXECUTIVES"* service, and to distinguish [appellant's] operation thereafter from those of the Franchisor and of other Franchisees within the System sufficiently to avoid any possibility of confusion by the public.

¶ 14 The plain language of Paragraph 7 does not enumerate a specific or exclusive list of the ways appellants could hold themselves out to the public as a System member. It is an ambiguous provision that is subject to more than one reasonable interpretation when applied to these facts. *See Madison Construction Co.,* 735 A.2d at 106. Therefore, it is for the court to determine what constitutes holding themselves out to the public as a System member.

¶ 15 A fair and reasonable reading of Paragraph 7 supports the trial court's finding that the phone numbers are included within its provisions. Paragraph 7 is a broad statement that does not, nor could it possibly, attempt to make an exclusive list of the ways appellants could hold themselves out to the public as a member of the System. However, it can easily be interpreted to include advertising.

■■■ ¶ 16 Advertising is a primary way for a business to hold itself out to the

public. One telephone number[2] is advertised under the name "Realty Executives" in the telephone directory of Lower Bucks County. The advertisement appears once in the white pages section and twice in the yellow pages section. These listings clearly hold appellants out to the public as a member of Realty Executives because the person calling assumes they will reach a Realty Executives office.

¶ 17 Thus, although Paragraph 7 does not specifically provide that all telephone numbers be transferred to RESPA in the event of termination, we find the language in Paragraph 7 to be sufficiently broad enough to allow such a transfer to be inferred. Therefore, the trial court did not err in ordering appellants to cease and desist using the numbers and to transfer them to RESPA.

 ¶ 18 Appellants next contend sufficient evidence did not exist to support the conclusion that their use of the two Realty Executives telephone numbers in connection with their new Realty Excel business would cause consumer confusion. "In reviewing the sufficiency of the evidence we are required to view the evidence in the light most favorable to the verdict winners." *Ferry v. Fisher,* 709 A.2d 399, 402 (Pa.Super.1998).

¶ 19 Paragraph 7 provides in pertinent part:

[Appellant] agrees upon any such termination to cease and refrain from holding [appellant] out to the public in any way as a member of the System ... or operator of an 'Realty Executives' service ... sufficiently to avoid any *possibility of confusion by the public.*

Franchise Agreement, (Petitioner's Exhibit 1), 11/1/95, at 10 (emphasis added). Paragraph 7 does not require *actual proof* of public confusion for it to apply. Rather, the standard imposed on appellants is to avoid the mere possibility of public confusion. Thus, that is the standard we apply.

¶ 20 Although appellants rightfully used these numbers while RESPA's franchisees, any continued use after termination will result in the possibility of confusion by the public. This is so especially in light of appellants' use of a very similar name, "Realty Excel." It is very easy to conceive the scenario where a member of the public wishes to do business with Realty Executives but becomes confused due to appellants' continued usage of the telephone numbers. The person consults the telephone directory, finds the Realty Executives listing in both the white and yellow pages and then telephones the number listed. When appellants answer the phone call with a very similar sounding name, the caller may not distinguish or may assume Realty Excel is affiliated with Realty Executives. This possibility of public confusion is exactly what Paragraph 7 seeks to avoid.

 ¶ 21 As discussed above, appellants' use of a very similar name to Realty Executives, along with the fact that Realty Excel is using the Realty Executives listing in the phone book can be easily said to lead to the possibility of public confusion. We find this evidence sufficient to satisfy the contractual standard of possible public confusion. Thus, appellants' claim fails.

¶ 22 Appellants next contend the proper remedy was to institute a split-interrupt service to permit callers to choose whether to contact a Realty Executives office or appellants' new business, thus alleviating potential consumer confusion and mitigating the harm to the appellants arising from the deprivation of the telephone numbers. Appellants cite to *Mayflower Transit, Inc. v. Ann Arbor Warehouse Co., Inc.,* 892 F.Supp. 1134 (S.D.Ind.1995), in support of their argument that the trial court abused its discretion and committed errors of law.

¶ 23 In *Mayflower,* the United States District Court balanced the harms between the parties involved in a similar dispute over telephone numbers. The de-

2. The listed telephone number is (215)579– 4200.

fendant was a new business that had staked much of its hopes of success on continued use of the telephone numbers in question that it had purchased from the plaintiff's former local booking agent. *See id.*, at 1144–45. The defendant employed an aggressive marketing strategy including using various types of leaflets, flyers, and targeted telemarketing campaigns all of which published the telephone numbers at issue. *See id.*, at 1145. On the basis of this evidence, the *Mayflower* Court found that defendant had developed an identity and clientele wholly unrelated to the plaintiff's yellow pages ad. *See id.* Thus, an outright transfer of the telephone numbers could seriously weaken the defendant's ability to compete in the marketplace. *See id.* The court determined that the potential harm to the plaintiff from the wrongful denial of an injunction was significantly outweighed by the potential harm to the defendant should an injunction be erroneously granted. *See id.*, at 1144. Consequently, the *Mayflower* Court applied intermediate relief and ordered the telephone numbers to be placed on a "split interrupt" service. *Id.*, at 1145.

¶ 24 Appellants argue that they are entitled to the same relief of split interrupt service as granted in *Mayflower*. We disagree and note "decisions of the federal district courts ... are not binding on Pennsylvania courts, even when a federal question is involved." *In re Insurance Stacking Litigation*, 754 A.2d 702, 704 n. 6 (Pa.Super.2000). Unlike the defendant in *Mayflower*, appellants did not provide any evidence of an aggressive advertising campaign or telemarketing scheme to alert the public that Realty Excel now operates under the telephone numbers. Appellants did present evidence that they bought new signs with the numbers posted on them. However, this evidence is not sufficient to establish that appellants developed an identity or clientele wholly unrelated to the telephone directory listings under Realty Executive's name. Allowing appellants to keep the numbers listed under Realty Executive's name would result in appellants receiving benefits to which they are not entitled. At the same time, RESPA is harmed because it loses customers who cannot reach a Realty Executive office. Since the public thinks Realty Executives no longer exist to service their area, they will go to a competitor.

¶ 25 Appellants also claim the public would be harmed by their complete enjoinment of the telephone numbers because it results in less competition in the marketplace. We disagree with this assertion for two reasons. First, in reviewing the Lower Bucks County telephone directory we note that there are well over one hundred real estate agents and businesses listed under the "REAL ESTATE" section. This implies there is ample competition in the real estate business so that the loss of appellants' use of the numbers will not harm the public. Second, there is nothing preventing appellants from competing in the marketplace with a different telephone number. If appellants receive a new telephone number, consumers will be able to call directory assistance and ask for "Realty Excel" to reach them.

¶ 26 Thus, unlike the result in *Mayflower*, we find RESPA's potential harm from a wrongful denial of an injunction significantly outweighs the potential harm to appellants from an erroneously granted injunction. Therefore, because we find the trial court committed no abuse of discretion or error of law in ordering appellants to cease use of the numbers, appellants' claim fails.

¶ 27 Order affirmed.