**MORGAN TRAILER MFG., CO., d/b/a Morgan Corporation, Appellant,**

v.

**HYDRAROLL, LTD.; Transpotech, Ltd.; Hydraroll, LLC., William Witwer; John Moyer and Tracie Mays, Appellees**

Superior Court of Pennsylvania.

Argued April 17, 2002.

Decided July 15, 2002.

Filed July 15, 2002.

27

Robert J. Reger, King of Prussia, for appellant.

Jeffrey R. Elliott, Wyomissing, for Hydraroll, Ltd., Transpotech, Ltd. and Hydraroll, LLC, appellees.

Before JOYCE, BECK and POPOVICH, JJ.

POPOVICH, J.

¶ 1 Morgan Trailer Mfg. Co. appeals the order denying leave to amend a motion for injunctive relief.[1]  We quash.

1. William Witwer, John Moyer and Tracie Mays were named as individual defendants by Morgan in the complaint suing Hydraroll, Ltd., Transpotech, Ltd., and Hydraroll, LLC, for specific performance, tortious interference with employment relations, misappropriation of trade secrets, breach of fiduciary duty, tortious interference with a contract, unfair competition and civil conspiracy.

On appeal, the individual defendants have notified this Court by letter dated October 9, 2001, that because "Morgan's request did not seek to amend the motion for injunctive relief against [them] in any way[, they] have no

¶2 The relevant facts and procedural history of the case up to the time of the initial appeal are set forth in *Morgan Trailer Mfg. Co. v. Hydraroll, Ltd. ("Morgan I")*, 759 A.2d 926 (Pa.Super.2000); to-wit:

Morgan ... is a New Jersey based corporation with its principal place of business at Morgantown, Berks County, Pennsylvania. Morgan is in the business of designing, manufacturing, marketing, selling and servicing truck bodies across the United States, Mexico and Canada. Hydraroll, Ltd., ("Hydraroll") is a British corporation with its principal place of business at Forge House ... Great Britain. Hydraroll was the manufacturer of automated vehicle loading systems and ... ancillary equipment used in the loading and unloading of trailers.

Morgan entered into a contract on March 1, 1983, with Hydraroll, whereby Morgan became the exclusive distributor of all Hydraroll systems and ancillary equipment in the United States, Caribbean Islands, Puerto Rico, Canada and Mexico ("North American Territory") for a period of five years. On March 1, 1988, the parties signed a second five-year contract for Morgan to be the exclusive distributor of Hydraroll systems and ancillary equipment for the North American [T]erritory. The parties signed another exclusive distributorship agreement dated April 23, 1993, which the parties agreed commenced on March 1, 1993 .... Upon expiration of this most recent five-year period, the contract was to continue until either party provided twelve months written notice of the agreement's termination pursuant to clause 2.1 of the contract. Transpotech, Ltd., ("Transpotech") also a British corporation, subsequently purchased the as-

sets and liabilities of Hydraroll and continued to manufacture, market and sell products under the "Hydraroll" brand name.

In July 1999, Steven Turner, Managing Director of Transpotech[,] visited Morgan's facilities to inspect the operation of a division of Morgan known as Advanced Handling Systems or AHS, which was the division of Morgan assigned the responsibility of distributing the Hydraroll products. Upon returning to Great Britain, Turner sent a letter to Morgan's then President Peter Hunt dated July 19, 1999 expressing dissatisfaction with AHS's distribution of Hydraroll's products and provided Hunt with twelve months notice of Hydraroll's intention to terminate the contract as provided by clause 2.1. Termination of the contract was to be effective on July 20, 2000. Turner also informed Hunt of several specific breaches of the contract committed by Morgan and advised if they were not cured within ninety (90) days of the date of the letter, the contract would be terminated "forthwith", on October 18, 1999.

On September 15, 1999, Hydraroll, LLC, a Pennsylvania limited liability corporation, was formed with Steve Turner as the Chief Executive Officer. Morgan alleges that Hydraroll LLC was formed as a business entity to distribute "Hydraroll" name brand products in North America. Also in September 1999, several Morgan and AHS employees resigned to work for Transpotech. On October 20, 1999, Transpotech representatives met with Morgan employees to inspect AHS facilities and personnel. Although disputed by Morgan, Transpotech subsequently decided that the breaches set forth in the July 19, 1999

interest in the resolution of Morgan's appeal

of this issue, and will not be filing a brief."

letter had not been cured or were cured inadequately and by way of letter dated October 28, 1999, Turner informed Hunt that the contract was terminated immediately as of October 18, 1999.

On November 3, 1999, Morgan filed a Complaint in equity and a Petition for Temporary Injunctive Relief alleging that Hydraroll, Transpotech, LLC[ ] (a Pennsylvania limited liability corporation) and the former Morgan and AHS employees hired by Transpotech had breached the contract and engaged in anti-competitive conduct as a result of the breach. On November 3, 1999, the emergency motions[ ] judge denied Morgan's request for a Temporary Restraining Order. The Defendants filed numerous preliminary objections to the Complaint and the Petition for Temporary Injunctive Relief. It soon became apparent that the threshold issue to be decided was this Court's subject matter jurisdiction ... [because of a contract provision stating that the contract would be interpreted in accordance with English law and that the parties submitted themselves to the exclusive jurisdiction of the English courts.] Consequently, on November 23, 1999, the court ordered that the issue of jurisdiction be briefed by the parties and scheduled for the next available argument court. By way of order dated December 20, 1999, the court sustained defendants' preliminary objections pursuant to Pa.R.C.P. 1028(a)(5) and dismissed the complaint and Petition for Injunctive Relief for lack of subject matter jurisdiction.

*Morgan I,* 759 A.2d at 927–929.

¶ 3 In *Morgan I,* this Court reversed the trial court for ruling that it was without subject matter jurisdiction because a forum selection clause in the contract required that English courts resolve any disputes. Further, we held the trial court

erred in denying Appellant's request for a preliminary injunction without a hearing and remanded the case so that one could be held.

¶ 4 Thereafter, Appellees filed with and received from a judge of the High Court of Justice, Queens Bench Division, an order restraining Appellant from taking any additional steps to pursue claims contained in Counts 1 and 10 (specific performance and breach of contract, respectively) of the complaint in the Common Pleas Court of Berks County, Pennsylvania. This was followed by a praecipe by Appellant seeking leave of the Common Pleas Court to amend its motion for injunctive relief to preclude Appellees from taking any further action in the English courts regarding this case. The motion was denied, and this appeal ensued raising two issues:

I. Whether the Trial Court abused its discretion by denying Appellant's Motion for Leave of Court to Amend its Motion for Injunctive Relief.

II. Whether, by denying Appellant's Motion for Leave of Court to Amend its Motion for Injunctive Relief, the Trial Court has violated the Superior Court's Order and Opinion ... [at *Morgan I* ] that instructed the Trial Court to adjudicate all claims set forth in Appellant's Complaint and Motion for Injunctive Relief, including those claims sounding in breach of contract.

■ ¶ 5 Preliminarily, we need to decide whether the order is final for appeal purposes. Under Pennsylvania law, an appeal may be taken from: 1) a final order or one certified by the trial court as final; 2) an interlocutory order as of right; 3) an interlocutory order by permission; or 4) a collateral order. *Pace v. Jefferson University Hospital,* 717 A.2d 539, 540 (Pa.Super.1998). The appealability of an order goes directly to the jurisdiction of the

■■■■■■■■■■■■■

court asked to review the order. *Fried v. Fried,* 509 Pa. 89, 501 A.2d 211 (1985).

■■ ¶ 6 A final order is any order that disposes of all claims and of all parties. Pa.R.A.P. 341(b)(1). The order denying Appellant's request to amend its motion for injunctive relief does not dispose of any of the eleven claims recited in the complaint. Also, this is not a case of an interlocutory order as of right under Pa. R.A.P. 311(a)(4), which reads:

**Rule 311. Interlocutory Appeals as of Right.**

(a) **General Rule.** An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:

\* \* \* \*

(4) *Injunctions.* An order granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except for injunctions pursuant to Sections 3323(f) and 3505(a) of the Divorce Code, 23 Pa.C.S. §§ 3323(f) and 3505(a). A decree nisi granting or denying an injunction is not appealable as of right under this rule, unless the decree nisi (i) grants an injunction effective upon the entry of a decree nisi or (ii) dissolves a previously granted preliminary injunction effective upon the entry of a decree nisi.

Stated otherwise, because no injunction has been denied or granted, Appellant's appeal does not fall within the perimeters of Rule 311(a)(4). *See* Trial Court Opinion, 7/27/01, at 5. Additionally, Appellant's appeal does not fall within any of the remaining perimeters of Pa.R.A.P. 311 regarding interlocutory appeals as of right.

■■ ¶ 7 Next, albeit Appellant filed a motion to amend the request for an injunction pursuant to 42 Pa.C.S. § 702(b) and Pa.R.A.P. 1311(b) (Interlocutory Appeals by Permission), the trial court did not rule on said motion, which inaction denies the request. *See* Trial Court Opinion, 7/27/01, at 5. Finally, Appellant filed a direct appeal from the order of May 9, 2001, without certification by the trial court or permission to appeal from this Court. Accordingly, to proceed to appellate review, the order at issue must qualify as a collateral order.

A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost. Pa.R.A.P. 313(b). To qualify as a collateral order for purposes of appeal, all three factors set forth in Rule 313 must be met. *McGourty v. Pennsylvania Millers Mut. Ins. Co.,* 704 A.2d 663, 665 (Pa.Super.1997).

■■ ¶ 8 It is beyond cavil that the determination of whether to grant or deny an injunction does not have the potential to decide any of the claims (ranging from breach of contract to tortious interference with existing customers) raised by Appellant in its eleven-count complaint. On the contrary, if granted, the injunction would have foreclosed Appellees from seeking refuge in the English courts against suit, but the merits of the claims raised would not have been decided. Reproduced Record at 132a, Paragraph 31. Thus, the first prong of the collateral order test is satisfied with the trial court's denial of leave to amend Appellant's motion for injunctive relief.

¶ 9 Nonetheless, the collateral order doctrine also requires the question presented to be of such urgency that, if review is postponed until final judgment in the case, the claim will be irreparably lost. *See* Pa.R.A.P. 313(b). Appellant cannot maintain that the proposed request to amend its motion for an injunction will be

irreparably lost if review of the court's order denying leave to amend is postponed until completion of the litigation. In fact, should the trial court enter an order "refusing" the request for the initial injunction, Appellant may take an appeal as of right without concern for whether the order is final for appeal purposes under Pa. R.A.P. 341 and seek an appropriate remedy at that time.

¶ 10 Consequently, given the posture of the case, we will not render what would be, in essence, an advisory decision in advance of the trial court conducting a hearing at Appellant's insistence to address the merits of the request for the initial injunction. As noted in *Morgan I,* "[i]t is the rare preliminary injunction that can correctly be denied without a hearing." 759 A.2d at 932; *see also* Pa.R.Civ.P. 1531(a)("A court shall issue a preliminary or special injunction only after written notice and hearing unless ... irreparable injury will be sustained before notice can be given or a hearing held ....") The criteria looked at in assessing whether to grant an injunction has been oft-stated; namely: 1) is the injunction necessary to prevent immediate and irreparable harm not compensable by damages; 2) would greater harm result from denying the injunction than from granting it; 3) is the petitioner's right to relief clear; and 4) will the status quo be restored if the injunction is granted. *See Commonwealth v. Cole,* 709 A.2d 994 (Pa.Cmwlth.1998).

¶ 11 Here, no evidence has been proffered nor have we been able to uncover any to indicate that Appellant will be irreparably harmed by conducting a hearing prior to ruling on the merits of granting or denying its request for the initial injunction.

¶ 12 Although Appellant may suffer inconvenience by virtue of postponing appellate review, inconvenience alone does not constitute irreparable loss of the proposed claim in this case. *Pace, supra* (trial court order denying leave to amend a complaint to add an alternative theory of recovery does not qualify as a collateral order for purposes of appeal).

¶ 13 We hold, therefore, that an order denying leave to amend Appellant's motion for injunctive relief does not qualify as a collateral order under Rule 313. Accordingly, we quash this appeal as interlocutory and unappealable.

¶ 14 Appeal quashed.