O.D. ANDERSON, INC., D/B/A Anderson Coach and Tour, and Anderson Coach and Travel, Appellee,

v.

Benjamin CRICKS, Richard Koewacich and Premier Tour & Travel, Inc., Appellants.

Superior Court of Pennsylvania.

Argued Oct. 3, 2002.
Filed Jan. 14, 2003.

---

William G. McConnell, Sharon, for appellants.

Thomas T. Frampton, Pittsburgh, for appellee.

Before JOYCE, MUSMANNO and CAVANAUGH, JJ.

OPINION BY JOYCE, J.:

¶ 1 Appellants, Benjamin Cricks, Richard Koewacich and Premier Tour & Travel, Inc., appeal from the February 4, 2002 order granting a permanent injunction in favor of Appellee, O.D. Anderson, Inc. d/b/a Anderson Coach and Tour and Anderson Coach and Travel. This order permanently enjoined Appellants from contacting or soliciting any of the individuals named in a retail tour customer list owned by Appellee. Upon review, we affirm. The relevant facts and procedural history are as follows.

¶ 2 Benjamin Cricks and Richard Koewacich are former employees of Bortner Bus and Tours, a tour company in Sharpsville, Pennsylvania. This company devoted a portion of its business to individual, charter and group tours. During his employ with Bortner, Cricks developed a close relationship with the sole proprietor of the company, Edwin Bortner, and eventually ascended to the position of Director of Operations. In this role, Cricks was placed in charge of the company's tour and bus business and had extensive access to the company's customer lists. These lists not only contained the names, addresses and telephone numbers of individuals that had previously traveled with the company, but also included information on the customers' previous travel destinations and dates of travel. Over the years, the customer lists became a very important resource for the company as a means to generate "repeat" business.

¶ 3 Throughout his ownership of Bortner Bus and Tours, Edwin Bortner developed no formal safeguards to preserve the confidentiality of the customer lists. Nonetheless, Bortner stressed to his employees that the lists were quite valuable and were not to be given to anyone outside of the company. To emphasize this point, Bortner sent Cricks to several seminars that outlined the importance of guarding such lists. Bortner also instructed his executive secretary, Jan Heaslip, to strictly maintain the confidentiality of the customer lists.

¶ 4 In 1997, Edwin Bortner sold his tour company to Travelways, Inc., a competing tour company operating in western Pennsylvania. As a part of this sale, Travelways acquired Bortner's group tour customer list and charter operation customer list. Despite the change in ownership, Cricks retained his position as the general manager of the Sharpsville office, and Koewacich and Heaslip continued as employees. After the sale, Travelways augmented the Bortner customer lists with information possessed by Travelways.

¶ 5 In November of 1999, Cricks resigned from his position with Travelways and opened a competing company, Premier Tour & Travel, the next day. In December of 1999, Koewacich also left Travelways to work with Cricks. Upon his resignation, Cricks took a variety of materials from Travelways, including computers disks containing the customer lists. When Travelways learned of this, it contacted Cricks and demanded that he return the

property. It also specified that it wanted Cricks to return any copies he had made of the customer lists. Two days later, Cricks sent a letter to Travelways stating that he intended to return the missing items but remained silent as to whether he would return any copies. Prior to returning the disks, Cricks printed and retained a copy of the customer lists for his own use.

¶ 6 After the opening of Premier Tour and Travel, Cricks did not immediately avail himself of the information contained on the customer lists. Rather, Cricks began to contact several tour group leaders with which he had a relationship over the years. About the same time, Travelways began to experience a decline in business but attributed this decline to Cricks' legitimate connections with people in the industry.

¶ 7 In the spring of 2000, Travelways decided to sell its Sharpsville office and approached Cricks about purchasing the operation and the customer lists. Without advising Travelways that he had retained copies of the lists, Cricks offered to purchase the retail tour customer list for $50,000.00, an amount seventy-five percent below other competitive bids. Accordingly, Travelways rejected Cricks' offer and entered into negotiations with Appellee for the purchase of the Sharpsville office.

¶ 8 On September 20, 2000, Appellee purchased various assets of Travelways d/b/a Bortner Tours. Pursuant to an "Asset Purchase Agreement," Appellee acquired various retail customer lists, including a group tour list and a charter operation list. Although Appellee knew that Cricks had started a competing business in western Pennsylvania, it was unaware that Cricks possessed a copy of these lists.

¶ 9 In December of 2000, Jan Heaslip called her former co-worker, Cricks, and offered to supply him with an updated copy of the retail customer lists. Recognizing that Appellee had just purchased these lists from Travelways, Cricks initially declined. Shortly thereafter, Cricks decided to accept the list and hired Heaslip as an employee at Premier Tour & Travel. Over the next few months, Appellants mailed retail tour information to the individuals on the lists in an effort to solicit their business.

¶ 10 After these mailings, several of Appellee's customers informed Appellee that they had received unsolicited mailings from Appellants. In light of this information, Appellee asked a number of its customers whether it had received similar information. After nearly fifty of Appellee's customers indicated that they had received this literature, Appellee suspected that Appellants had obtained a copy of its customer lists.

¶ 11 On September 21, 2001, Appellee filed a complaint against Appellants seeking legal damages for misappropriation of trade secrets, breach of agency duty, theft and interference with business advantage. Additionally, Appellee also filed a motion seeking temporary and permanent injunctive relief so Appellants could not solicit those individuals named on the customer lists. Appellants filed preliminary objection to this complaint, and on November 6, 2001, the trial court granted a demurrer on the breach of agency and theft counts. Thereafter, on January 4 and 22, 2002, the trial court held a hearing on Appellee's petition for a preliminary injunction, and on January 25, 2002, granted Appellee's petition. The trial court entered an order enjoining Appellants from contacting any of the names on the list retained by Cricks after his resignation and any of the individuals contained on the updated list supplied by Heaslip. The trial court also filed an Adjudication containing its findings of

fact and conclusions of law and directed Appellants to post bond.

¶ 12 On January 29, 2002, Appellants posted bond and filed a demand for a final hearing pursuant to Pa.R.C.P. 1531(f)(1) alleging that the January 25, 2002 order abridged Appellants' ability to exercise their constitutionally protected freedoms of commercial speech and expression. On February 1, 2002, the trial court scheduled a final hearing for the same day and bifurcated Appellee's request for injunctive relief from the remaining requests contained in its complaint. After the hearing, the trial court issued an order on February 1, 2002, which adopted the findings of fact and conclusions of law set forth in its previous Adjudication, and made the preliminary injunction permanent. The prothonotary later docketed this order on February 4, 2002. In an opinion filed on February 5, 2002, the trial court explained that it based its decision upon evidence that the lists constituted a trade secret, that Appellants wrongfully obtained the lists and that Appellee had a right to seek relief as the current owner of the lists. Appellants filed a timely notice of appeal from the February 4, 2002 order.

¶ 13 Initially, we must decide whether the appeal from the February 4, 2002 order of the trial court is properly before this Court. We may raise the issue of appealability *sua sponte* because it affects our jurisdiction. *Morgan Trailer Mfg., Co. v. Hydraroll, Ltd.*, 804 A.2d 26, 29–30 (Pa.Super.2002). In this Commonwealth, an appeal may only be taken from: "1) a final order or one certified by the trial court as final; 2) an interlocutory order as of right; 3) an interlocutory order by permission; or 4) a collateral order." *Id.* at 29. In their brief, Appellants indicate that the instant appeal from the order granting injunctive relief is interlocutory as of right pursuant to Pa.R.A.P. 311(a)(4).

Appellants' Brief, at 3. Appellees do not dispute this contention. Nevertheless, as the appealability of this order implicates the jurisdiction of this Court, we must review this issue. *Morgan Trailer Mfg. Co.*, 804 A.2d at 29–30.

¶ 14 It is important to note that the instant order stems from Appellants' invocation of Rule 1531(f) of the Pennsylvania Rules of Civil Procedure. Appellants employed this special procedure for obtaining permanent injunctive relief after asserting that the order effectively restricted their ability to exercise their freedoms of commercial speech and expression. *See School District of Pittsburgh v. Pittsburgh Federation of Teachers et al.*, 486 Pa. 365, 406 A.2d 324 (1979) (stating that freedom of expression is restrained by a preliminary injunction where the order prohibits certain communication by an appellant). Rule 1531 provides, in relevant part:

## Rule 1531. Special Relief. Injunctions.

(f)(1) When a preliminary or special injunction involving freedom of expression is issued, either without notice or after notice and hearing, the court shall hold a final hearing within three days after demand by the defendant. A **final decree** shall be filed in the office of the prothonotary within twenty-four hours after the close of the hearing. If the final hearing is not held within the three-day period, or if the final decree is not filed within the twenty-four hours after the close of the hearing, the injunction shall be deemed dissolved.

(2) **When the defendant demands such a final hearing, no further pleadings shall be required and Rule 1517 relating to adjudication and decree nisi and Rules 227.1 and 227.3 relating to post-trial relief shall not apply.**

(3) The trial judge shall file a written memorandum supporting the **final decree** within five days after it is filed.

Pa.R.C.P. 1531(f) (emphasis added). This Rule was designed to ensure that the defendant receives a prompt, final judicial decision when his/her constitutional rights of expression are implicated. *See* Explanatory Comment—1973. *See generally Duggan v. 807 Liberty Avenue*, 447 Pa. 281, 288 A.2d 750 (1972).

¶ 15 Pursuant to Appellants' request, the trial court scheduled a final hearing on Appellee's petition for a permanent injunction on February 1, 2002. After conducting this hearing, the trial court issued an order on February 4, 2002 that permanently enjoined Appellants from contacting the individuals on the lists.[1] As Rule 1531(f)(2) specifically states that traditional rules governing decree nisi and post-trial relief do not apply in this instance, Appellants filed the instant appeal and deemed it "interlocutory as of right."

¶ 16 Rule 311 of the Pennsylvania Rules of Appellate Procedure provides for those instances when a litigant may take an interlocutory appeal as of right. The Rule states, in relevant part:

### Rule 311. Interlocutory Appeals as of Right

(a) **General Rule.** An appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from:

. . .

(4) *Injunctions.* An order granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except for injunctions pursuant to Sections 3323(f) and 3505(a) of the Divorce Code, 23 Pa.C.S. §§ 3323(f) and 3505(a). A decree nisi granting or denying an injunction is not appealable. as of right under this rule, unless the decree nisi (i) grants an injunction effective upon the entry of a decree nisi or (ii) dissolves a previously granted preliminary injunction effective upon the entry of a decree nisi.

Pa.R.A.P. 311(a)(4).

¶ 17 Recently, our Supreme Court explained the plain meaning of this rule in *Wynnewood Development, Inc. v. Bank and Trust Co. of Old York Road*, 551 Pa. 552, 711 A.2d 1003 (1998). In that case, Wynnewood Development, Inc. ("Wynnewood") filed a complaint against the Bank and Trust Co. of Old York Road ("Old York Road") after Old York Road refused to sell Wynnewood a piece of real estate pursuant to an agreement of sale. *Id.* at 554, 711 A.2d at 1004. In its prayer for relief, Wynnewood sought injunctive relief to prevent Old York Road from transferring Old York Road's rights to the property in dispute. *Id.* Wynnewood also sought specific performance of the contract and compensatory damages. *Id.* When

---

1. At the outset, we note that the trial court made every effort to comply with the requirements of Rule 1531(f). Appellants filed a demand for a hearing on January 29, 2002, and the trial court conducted this hearing within thirty-six hours after the receipt of the demand. Additionally, the trial court fashioned an order granting a permanent injunction on February 1, 2002, within twenty-four hours after the hearing. Nevertheless, the Prothonotary failed to docket the order until February 4, 2002, three days after the hearing. As the instant order was not properly docketed within twenty-four hours after the hearing, the Rule states that the preliminary injunction affecting the parties had dissolved prior to the entry of the order. Notwithstanding, this procedural error has no effect upon the validity and finality of the permanent injunction, which is before us on appeal. *See Ranck v. Bonal Enterprises*, 467 Pa. 569, 576, 359 A.2d 748, 752 (1976) (stating that Rule 1531(f) only provides for the dissolution of a preliminary injunction; it does not preclude a subsequent adjudication of the final complaint).

Old York Road filed a motion for summary judgment, the trial court granted the motion as it related to Wynnewood's prayer for equitable relief. *Id.* at 555, 711 A.2d at 1005. However, the trial court permitted Wynnewood to proceed with its claim for compensatory damages. *Id.*

¶ 18 Wynnewood filed an immediate appeal pursuant to Rule 311(a)(4), and a panel of our Court quashed the appeal as interlocutory. *Id.* On appeal, our Supreme Court reviewed the language of Rule 311(a)(4) and determined that an appeal from the dismissal of Appellant's complaint for injunctive relief was interlocutory as of right. *Id.* at 556–57, 711 A.2d at 1005. Specifically, the Court stated as follows:

In construing Rule 311(a)(4), this Court is guided by the rules of statutory construction. Pa.R.A.P. 107. When the words of a statute are clear and free from ambiguity, the letter of the words cannot be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S.1921(b). This Court finds that the plain meaning of the words contained in Rule 311(a)(4) is that an order refusing a request for an injunction is an interlocutory order appealable as of right unless the order involves an injunction issued pursuant to two explicit provisions of the Divorce Code or the order is in the form of a decree nisi. [FN5]

[FN5] A decree nisi is a "provisional decree, which will be made absolute on motion unless cause be shown against it." Black's Law Dictionary (6th Ed.) at 411.

Here, the denial of Wynnewood's prayer for injunctive relief was neither made under the Divorce Code nor entered as a decree nisi. Thus, Rule 311(a)(4) mandates a finding that the trial court's order granting Old York Road's motion for summary judgment and dismissing Wynnewood's prayer for injunctive relief and specific performance was an interlocutory order appealable as of right.

*Id.* at 556–57, 711 A.2d at 1005 (footnote omitted) (italics omitted).

¶ 19 Upon our reading of *Wynnewood* and the plain language of Rule 311(a)(4), we find that Appellants properly characterized this appeal as interlocutory as of right. Our review of the record reveals that the trial court entered an order that granted Appellee's petition for injunctive relief. The trial court did not enter this order pursuant to the two explicit provisions of the Divorce Code. Nor did the instant order constitute a decree nisi. Rather, pursuant to Rule 1531(f)(2) of the Pennsylvania Rules of Civil Procedure, *supra*, Appellee demanded a final hearing and the trial court entered a final, not provisional, decree. As the instant appeal qualifies as an interlocutory appeal as of right pursuant to Rule 311(a)(4) and *Wynnewood*, we must now turn to a review of the underlying issues on appeal.[2]

---

2. In making this determination, we are mindful of the Commonwealth Court's general declaration in *Humphreys v. Cain*, 84 Pa.Cmwlth. 222, 474 A.2d 353, 355 (1984) that "the language in Rule 311(a)(4) was meant to apply only to preliminary injunctions." In *Humphreys*, the Commonwealth Court confronted a situation where Humphreys filed an appeal from a decree nisi that granted permanent injunctive relief in favor of Cain. *Id.* at 354. The Court quashed the appeal as premature and explained that "to hold otherwise, would make those Rules of Civil Procedure meaningless which require a chancellor to file a decree nisi and to hear filed exceptions." *Id.* at 355 (italics omitted).

At the time of the court's decision in *Humphreys*, the language of Rule 311(a)(4) did not include the provision that addressed the appealability of a decree nisi, which granted or denied an injunction. When Rule 311(a)(4) was amended in 1996, the Supreme Court specifically addressed this issue by inserting a provision that limited the appealability of a

¶ 20 In their brief, Appellants raise the following issues for our review:

1. Whether the trial court erred in permanently and indefinitely enjoining [Appellants] from contacting any individuals contained on a tour customer list based upon a claim of misappropriation of trade secrets when the customer list had been compromised and was no longer confidential prior to its purchase by [Appellee].

2. Whether the trial court erred in permanently and indefinitely enjoining [Appellants] from contacting any individuals contained on a tour customer list purchased by [Appellee] based upon a claim of misappropriation of trade secrets when the trial court failed to find the existence of either a restrictive covenant or an employer/employee relationship between the parties?

Appellants' Brief, at 3.

¶ 21 Our scope of review from an order granting a permanent injunction is limited. *RESPA of Pennsylvania, Inc. v. Skillman*, 768 A.2d 335, 339 (Pa.Super.2001). We must accept the chancellor's factual findings and accord them the weight of a jury verdict if they are supported by competent evidence. *Id.* "We are not, however, bound by conclusions drawn from those facts or by legal conclu-

sions and may reverse for abuse of discretion or error of law." *Id.*

¶ 22 In their first issue, Appellants assert that the trial court erred in granting a permanent injunction since Appellee failed to establish that the customer lists obtained from Travelways constituted trade secrets. Appellants' Brief, at 13. Specifically, Appellants contend that Appellee could not demonstrate that it maintained the confidentiality of the lists. *Id.* We disagree.

¶ 23 The courts of this Commonwealth have generally accepted Section 757 of the Restatement of Torts as the basic outline for our trade secrets law. *Den-Tal-Ez, Inc. v. Siemens Capital Corp.*, 389 Pa.Super. 219, 566 A.2d 1214, 1228 (1989). Section 757 states that

[a] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.

*Id.* (citing Restatement of Torts § 757, comment b). The crucial indicia for determining whether certain information constitutes a trade secret are "substantial secrecy and competitive value to the owner." *Id.* It is not the character of the information that is relevant under Pennsylvania

decree nisi to two situations. The accompanying note to Rule 311(a)(4) indicated that the Supreme Court added this language to adopt "the position that generally an appeal may not be taken from a decree nisi granting or denying a permanent injunction." At no point, however, did the Note suggest that an appeal from a final decree, which granted or denied a permanent injunction, was not appealable under Rule 311(a)(4). Additionally, in 1998, the Supreme Court in *Wynnewood* interpreted the language of the Rule *to permit* an interlocutory appeal from an order granting or denying injunctive relief *unless* the order involves two explicit provisions of the Divorce Code or is in the form of a decree

nisi. *Wynnewood, supra* at 556, 711 A.2d at 1005.

In view of the post-*Humphreys* amendment to Rule 311(a)(4) and the interpretation of this amended rule in *Wynnewood,* we decline to follow the general declaration in *Humphreys* that Rule 311(a)(4) was only meant to apply to preliminary injunctions. *See Yoder v. American Travellers Life Ins. Co.,* 2002 WL 31846188, *2 (Pa.Super.Dec.20, 2002) (holding that the decisions of the Commonwealth Court are not binding on the Superior Court). Nothing in the language of Rule 311(a)(4) or our Supreme Court's decision in *Wynnewood* bars the instant appeal from a final decree granting permanent injunctive relief.

law. *Id.* Rather, the determination of whether the information is a trade secret must be made on a case-by-case basis. *Id.* We do note, however, that other courts in this Commonwealth have determined that customer lists constitute a trade secret. *See Morgan's Home Equip. Corp. v. Martucci,* 390 Pa. 618, 624, 136 A.2d 838, 842 (1957) (lists of confidential and valuable customer data constituted trade secrets); *A.M. Skier Agency, Inc. v. Gold,* 747 A.2d 936, 941 (Pa.Super.2000) (trial court did not abuse discretion in issuing a preliminary injunction for misappropriation of trade secrets where employee stole a directory listing client names and contact information).

■ ¶ 24 In the instant case, Appellants argue that the customer lists purchased by Appellee do not constitute trade secrets because Appellee knew, at the time of purchase, that the lists were no longer confidential. Despite this assertion, our review of the record and relevant case law demonstrates the contrary.

¶ 25 Foremost, Douglas Anderson testified that Appellee regarded the customer lists as the most valuable asset that it purchased from Travelways. N.T. Injunction Hearing, 1/4/02, at 202–03. Anderson testified that customer lists were frequently used for the solicitation of business and that Appellee spent a lot of "time, money and effort in developing them." *Id.* These lists, which detailed the names, addresses, phone numbers and tour preferences of previous customers, were valuable since they helped to target the most likely customers for future tours. *Id.* at 19. Specifically, Anderson testified that ninety to ninety-five percent of Appellee's business was generated by repeat customers and that forty-five percent of its business stemmed from repeat customers contained on its retail tour lists. *Id.* at 138–9.

¶ 26 Additionally, Anderson emphasized during the hearing that the value of the customer lists stems from their confidentiality. *Id.* at 203. In view of this, Appellee restricted the access to its lists, *id.* at 142, and even had the lists password-protected. *Id.* at 218. Anderson also testified that when it purchased its lists from Travelways that Appellee had no reason to believe that the lists had been compromised. *Id.* at 151.

¶ 27 In support of this testimony, Joseph Scott, President of Travelways, testified that his company placed a very high value on the integrity of its customer lists. *Id.* at 62. When it learned that Cricks had taken company property upon his resignation, it immediately demanded its return. *Id.* at 19–22. When Cricks returned the items, he informed Travelways that he had given back all of its property. *Id.* Later, when Travelways began to experience financial difficulties, Cricks even offered to purchase Travelways' assets, which included the same lists, for $50,000.00. *Id.*

¶ 28 Upon our consideration of this testimony, we do not find that the trial court abused its discretion when it determined that the customer lists constituted trade secrets. Appellee presented testimony that these extensive compilations were both valuable and strictly maintained. Additionally, Appellee had no reason to believe, in view of Cricks' representations and offer to purchase the lists, that he had retained copies of the lists after his resignation. Accordingly, we find no merit to Appellants' first issue.

■ ¶ 29 In their second issue, Appellants assert that the trial court erred when it determined that Appellee had demonstrated a valid claim for misappropriation of trade secrets. Appellant's Brief, at 16. Appellants contend that they cannot be charged with misappropriation because they were never involved in an employ-

ee/employer relationship with Appellee and because they never signed a restrictive covenant. *Id.* Upon review, we disagree.

 ¶ 30 Traditionally, a claim asserting the misappropriation of trade secrets arises in the context of an employer/employee relationship. In recognition of this, courts of our Commonwealth have designed the following test for misappropriation:

> (1) that there was a trade secret . . .; (2) that it was of value to employer and important in the conduct of his business; (3) that by reason of discovery of ownership the employer had the right to the use and enjoyment of the secret; and (4) that the secret was communicated to the employee while he was in a position of trust and confidence under such circumstances as to make it inequitable and unjust for him to disclose it to others, or to make use of it himself, to the prejudice of his employer.

*A.M. Skier,* 747 A.2d at 940.[3] Nevertheless, in *Den–Tal–Ez, Inc. v. Siemens Cap. Corp.,* 566 A.2d at 1214, a panel of our Court suggested that a claim for misappropriation may be permissible in a wider context. It stated:

> Sections (a) and (b) of Section 757, also adopted in Pennsylvania, provide the following grounds for a misappropriation of trade secrets action:
>
> > One who discloses or uses another's trade secret, without a privilege to do so, is liable to another if:
> >
> > (a) **he discovered the secret by improper means, or**
> >
> > (b) his disclosure or use constitutes a breach of confidence reposed in him

by the other in disclosing the secret to him.

Thus, the existence of a trade secret is a prerequisite. However, Pennsylvania law also requires the existence of a confidential relationship or discovery of the trade secret by improper means. Thus, the conduct of the defendant is not irrelevant. It must also be analyzed to ascertain whether the conduct is in breach of a confidential relationship **or, lacking such relationship, was "improper."**

*Id.* at 1228–29 (internal citations omitted) (emphasis added).

¶ 31 In the instant case, it is undisputed that Appellants were never involved in an employer/employee relationship with Appellee. Appellee acquired the assets of Travelways after Cricks and Koewacich resigned and after the formation of their competing business, Premier Tour & Travel. Nevertheless, it is also clear that Appellants obtained the customer lists by improper means; they stole the lists from Travelways and utilized them to solicit customers for their own business. Further, the record demonstrates that Cricks knew his actions were improper. He had been instructed by former employers to preserve the confidentiality of the lists and even admitted at the hearing that he would never give the list to a competitor. N.T. Injunction Hearing, 1/4/02, at 87. As further support, we note that Cricks intentionally deceived Travelways by informing them that he had returned all of its property when he had not. In view of these actions, Appellee, as the owner of the lists, has established a valid claim for misappropriation under *Den–Tal–Ez.* Accordingly, we do not find that the trial court abused

---

**3.** Although it is not crucial to the resolution of this issue, we reject Appellants' contention that a claim for misappropriation cannot exist where the employee did not sign a confidentiality agreement or covenant not to compete. *See Christopher's Hand Poured Fudge, Inc. v. Hennon,* 699 A.2d 1272, 1276 (Pa.Super.1997).

its discretion in entering a permanent injunction on this claim.

¶ 32 Order affirmed.