## Kershes v. Verbicus et al.

*I. Herbert Rothenberg*, for plaintiff.
*Harold J. Conner*, for defendants.

OLIVER, P. J., June 28, 1939.—Complainant's bill in equity sets forth that complainant and defendants live in adjoining houses on North Twenty-sixth Street, in the City of Philadelphia. The bill alleges that defendants, individually and in concert, have pursued the following course of conduct toward complainant and members of complainant's family: They have repeatedly, and almost daily, heaped oral abuse upon complainant, employing obscene epithets and accusing her of being guilty of a substantial proportion of the major felonies; they have threatened various forms of violent physical assault against complainant, and various forms of trespass to complainant's realty, and on many occasions have committed such trespasses. All of this has had a shattering effect upon complainant's nerves, has impaired her health, and has rendered impossible the peaceful enjoyment of her premises by complainant and her family. It is averred that this course of conduct has been motivated by a desire on the part of defendants to compel complainant and her family to move from, or to abandon, their home. The bill prays for an injunction to put a stop to this course of conduct.

Defendants' answer denies every allegation in the bill having to do with the acts regarding which complaint is made. On May 26, 1939, the case came on for a hearing and evidence was presented on behalf of complainant and defendants.

### Findings of fact

After a consideration of the evidence, the pleadings, and the requests of counsel, the chancellor makes the following findings of fact:

1. Anna Kershes, complainant, is the owner and occupant of the premises 1743 North Twenty-sixth Street in the City and County of Philadelphia, where she has resided with her family for approximately three years.

2. Defendants, Ella Verbicus and her two daughters, Adelia and Mary Verbicus, reside at premises 1741 North Twenty-sixth Street, Philadelphia, immediately adjoining the premises above described as belonging to complainant.

3. Approximately two months after complainant and her family first went into possession of said premises, defendants, individually and in concert, commenced orally abusing complainant and the other members of her family. This abuse consisted of repeated accusations, shouted in a loud tone of voice from defendants' premises toward those of complainant, that complainant, or her children, were guilty of a number of serious crimes, including robbery, sodomy, and fornication. Opprobrious and vile epithets were used, frequently in the presence of persons not members of complainant's immediate family. This course of conduct has continued, but for a few short periods of relative quiescence, up until the time of the institution of this proceeding, and threatens to continue into the future.

4. These accusations against complainant and the members of her family are untrue, and no cause has been given to defendants which might justify or tend to provoke the use of hostile epithets.

5. Defendants, and each of them, have on many occasions threatened to do physical violence to the person of complainant by various means, such as the pouring of scalding water upon her. Although none of these threats has been carried into effect, they have been made with such frequency and such hostility that complainant has been put in considerable fear for her safety and her health has been detrimentally affected.

6. Defendants, and each of them, have committed numerous and frequent trespasses against the premises and personal property of complainant. They have thrown refuse into complainant's enclosure and have deposited bundles of filth on complainant's doorstep. They have almost weekly hurled quantities of dirty water upon complainant's wash, hanging in complainant's rear yard to dry. They have threatened to break the windows of complainant's house, but have not carried this threat into effect.

7. The various acts above referred to, of which complaint is made, amount to a settled course of conduct, manifesting an intense hostility toward complainant, which hostility complainant and the members of her family have done nothing to provoke. This course of conduct is apparently motivated by a desire to drive complainant and her family from their home by rendering impossible the peaceful enjoyment of the premises.

8. Defendants' course of conduct has materially interfered with the ordinary comforts of complainant's life and has seriously impaired the reasonable enjoyment of her premises.

## Discussion

The facts in this case are clearly established by complainant's proofs, as is also the urgent need for a decisive remedy. The chancellor was favorably impressed by the appearance and demeanor of complainant and her witnesses while upon the witness stand and believes their testimony was truthful. He does not believe the testi-

mony given by defendants. Although each of defendants testified in denial of plaintiff's complaints and accused plaintiff and her family of similar acts toward defendants, no corroborative evidence was produced in support of their denials. On the other hand, several witnesses were produced by complainant whose testimony strongly corroborated complainant's own testimony and that of her son. Two of these witnesses were near neighbors, one of whom resides in the premises directly across the street from the house occupied by the Verbicuses, and the other of whom resided, until very recently, directly across from Mrs. Kershes' home. A third witness, Mrs. Mary Ankholitis, testified that she occupied the premises 1743 North Twenty-sixth Street, immediately prior to Mrs. Kershes' occupation of these premises. Her testimony showed that defendants had adopted exactly the same course of conduct toward her, and that, because of the repeated acts and false accusations directed at her by defendants, she had been compelled to move away from the neighborhood. From the statements of these witnesses, as well as from their demeanor on the witness stand, on both direct and cross-examination, the chancellor is entirely satisfied that defendants without justification have pursued the wrongful course of action described in the above findings of fact, and is convinced that unless proper action is taken this conduct will continue indefinitely into the future, greatly to the injury of complainant.

Defendants' conduct falls largely into three classes: (1) Repeated trespasses against complainant's realty; (2) repeated slanders against complainant; (3) loud, hostile, threatening, and obscene shouting toward complainant's premises, directed either at complainant or at her children, individually or together. The question arises as to whether the equitable remedy of injunction may properly be employed to terminate any or all of these types of activity, for it scarcely need be stated that, if it may be employed, this case urgently demands it.

Ordinarily equity will not take jurisdiction to enjoin any of the three types of activity we have listed. That is, equity will not enjoin a trespass, it will not enjoin a slander, and it will not enjoin loud shouting and obscenity. The reason for this is that in the ordinary case there is an adequate remedy either in a civil suit at law, or in a prosecution under the criminal statutes. But where these activities are repeated, practically continuous, and almost certain to continue into the future, it is clear that the legal remedy is not adequate. Where this is the situation the legal remedies can lead only to a "multiplicity of suits," and there is no more well-settled ground of equitable jurisdiction than this. The Pennsylvania cases are cited at great length in Kramer v. Slattery, 260 Pa. 234, 241 (1918), and the general rule is ably summarized as follows:

"In each of these cases, whenever an injunction is granted, or even suggested as a proper remedy, the facts relied upon plainly indicate a state of affairs which, in all probability, would give rise to interminable litigation, if prompt equitable relief were not granted; or they show either torts inherently of a permanent character or circumstances strongly suggesting that the wrongs complained of would, in all probability, be repeated so continuously that, by reason of their persistency in this respect, they in effect would be permanent in nature, and so harassing as to amount to a harmful nuisance, the mischief or damage from which could be estimated only by conjecture—that is to say, would be incapable of measurement by any ordinarily accurate standard, or, in legal parlance, would be 'irreparable'; and, in some of these cases, the facts relied upon show that the acts in question, if persisted in, would constitute a permanent use of, or would be ruinous to, or seriously interfere with the occupancy and enjoyment of, the plaintiff's real estate".

The quoted language describes, with remarkable accuracy, the situation in the present case. There can be little

doubt that a course of conduct such as the one so clearly shown by the behavior of the present defendants falls within the purview of the rule stated in the Kramer case. The continuing and repeated trespasses to complainant's realty constitute a well-established subject of equitable injunction: Kramer v. Slattery, supra; Tri-Cities Water Co. v. Monessen, 313 Pa. 83 (1933); Remaley et al. v. Peoples Natural Gas Co., 307 Pa. 237 (1932). While we are not aware of any case in this State in which a repeated or continuous slander has been enjoined, it appears by implication from the case of Baltimore Life Ins. Co. v. Gleisner, 202 Pa. 386 (1902), that in very clear cases equity is not without power to interfere. It is not suggested, however, that as a general rule equity may take jurisdiction to enjoin either slander or libel, even if continued or repeated. In no case will equity entertain jurisdiction of a question which does not affect property rights: Sparhawk v. The Union Passenger Ry. Co., 54 Pa. 401 (1867). Thus, where it was sought to restrain a defendant from molesting, insulting, and humiliating a certain Jewish rabbi, it was held that the injunction was properly granted so far as concerned defendant's behavior upon the premises of the church, but that the injunction should be dissolved insofar as it restrained defendant near the premises of the synagogue or in the public streets: Ashinsky v. Levenson, 256 Pa. 14 (1917). It might be contended that since defendants are not alleged to have been actually on complainant's premises when they uttered the slanderous, threatening, and obscene remarks, the rule of the Ashinsky case would defeat equitable jurisdiction in the present instance, but we do not think that this is the correct interpretation of that case. The basis of the right to relief is not the presence or absence of the offending party on the premises, but the interference with the ordinary enjoyment of the premises by plaintiff. In the Ashinsky case, to have allowed the injunction against molestation on the streets to stand would have been to grant protection to a

purely personal right of plaintiff, in no way connected with the enjoyment of the synagogue premises. It was the absence of plaintiff from the premises at such times that was controlling, not the fact that defendant was no longer a trespasser.

If what may be termed the "oral conduct" of the present defendants is to be enjoined, it must be enjoined not as an invasion of complainant's personal right to be free from slander, threats, and other verbal abuse, but as a direct interference with her property rights in the premises in which she resides; in other words, as a private nuisance. Noise which constitutes a nuisance to a person of ordinary sensibility to sound, so as materially to interfere with the ordinary comforts of life and to impair the reasonable enjoyment of his habitation, is a nuisance and is enjoinable by a court of equity: Krocker et al. v. Westmoreland Planing Mill Co., 274 Pa. 143 (1922). Very obviously, the extent to which noises interfere with comfort and impair enjoyment depends not only upon their volume but also upon their character. Hostile or obscene noises are naturally more disturbing than are impersonal and mechanical noises of the same intensity. Furthermore, the absence of the element of social policy in favor of legitimate manufacturing or construction, which is so strongly present in many nuisance cases, renders the hostile noises in the present case even more appropriately subject to injunction.

In Larmouth v. Ray, 48 Pa. C. C. 604, 605 (1920), an injunction was granted against the operation of a pool room closely adjoining plaintiff's premises because of the emanation therefrom of loud noises, involving a great deal of profane language, occurring nightly. The court said:

"The plaintiffs are entitled to the free use and enjoyment of their home, without undue interference by their neighbor; and to the extent to which such use is denied or interfered with a nuisance is created, against which the plaintiffs are entitled to equitable relief."

A similar injunction was granted in the New York case of Barnard v. Finkbeiner et al., 162 App. Div. 319 (1914), where the court stated: "The frequent use of loud, profane, vile and obscene language that can be heard in plaintiff's building may be said to render it 'unfit for comfortable or respectable occupation, and unfit for the purposes it was intended for'." See also Cranford et al. v. Tyrrell, 128 N. Y. 341 (1891).

From what we have said it must be apparent that the course of conduct indulged in by defendants in this case amounts to a clear legal nuisance affecting complainant's right to the reasonable and comfortable enjoyment of her property. As such, it should certainly be enjoined.

It has been said that threats of harm, unaccompanied by any overt acts, are not sufficient to warrant the issuance of an injunction unless there is a reasonable probability of their being carried into effect: Scranton Coal Co. v. City of Scranton, 37 Lack. Jur. 189 (1936). Without speculating as to the probability of defendants' carrying out such threats as their statement that they would pour boiling water upon complainant (although it was apparent at the trial that they are large and powerfully built women), we have no difficulty in concluding that, under all the circumstances of this case, these threats should be enjoined. They are simply a part of the whole pattern of conduct which defendants seem to have evolved in order to harass their nearest neighbors. It is futile to endeavor to analyze and to pass separately upon each element of this complete pattern. Perhaps no one element would constitute a proper subject for injunction, standing alone. But when they are considered together as a whole, it becomes apparent that they constitute a course of conduct, or a settled condition, which is properly described in legal phraseology by the term "nuisance". In our opinion this is an especially strong case, a flagrant one, and accordingly we conclude that the restraining arm of equity should vigorously be applied.

## Conclusions of law

The chancellor draws the following conclusions of law:

1. Complainant has no adequate remedy at law against the repeated trespasses committed by defendants against the real property of complainant.

2. Complainant is entitled to the equitable remedy of injunction against the aforesaid trespasses against her real property.

3. Complainant has no adequate remedy at law against the repeated and almost' continual threats, accusations, slander, and obscene abuse directed at her and at the members of her family by defendants.

4. The aforesaid threats, accusations, slander, and obscene abuse so materially interfere with the ordinary comforts of life and the reasonable enjoyment of complainant's habitation that they amount to a legal nuisance.

5. Complainant is entitled to the equitable remedy of injunction against the aforesaid nuisance.

## Decree nisi

And now, to wit, June 28, 1939, in accordance with the foregoing findings of fact and conclusions of law, it is ordered, adjudged, and decreed:

1. That defendants, and each of them, be, and they hereby are, permanently enjoined and restrained:

(a) From committing trespass in any manner whatsoever against the premises of complainant known as 1743 North Twenty-sixth Street in the City and County of Philadelphia;

(b) From directing to or against complainant, or against any member of her immediate family, while complainant, or while such member of her immediate family, is in or upon, or about to enter upon or leave, the aforesaid premises known as 1743 North Twenty-sixth Street, any threat of physical harm or any threat of trespass to either real or personal property of complainant, or any

accusation, slander, obscene epithet, or loud hostile remark of any character whatsoever;

(c) From committing any nuisance whatsoever against the real property of complainant located at 1743 North Twenty-sixth Street;

(d) From interfering in any manner with the peaceful enjoyment of said premises by complainant and the members of her immediate family.

2. That defendants shall pay the costs of this proceeding.

The prothonotary is directed to enter this decree nisi, and to give notice thereof to the parties or their counsel, and unless exceptions thereto are filed within 10 days thereafter, either plaintiffs or defendant may present a form of final decree to be entered in the case.