J-A17043-14

2014 PA Super 233

| LIBERTY PLACE RETAIL ASSOCIATES, L.P., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| ISRAELITE SCHOOL OF UNIVERSAL PRACTICAL KNOWLEDGE AND JOHN DOES 1 – 10, | |
| Appellees | No. 2557 EDA 2013 |

Appeal from the Order entered July 24, 2013
In the Court of Common Pleas of Philadelphia County
Civil Division at No: 2013-130502028

BEFORE:  GANTMAN, P.J., PANELLA, and STABILE, JJ.

OPINION BY STABILE, J.:                    **FILED OCTOBER 14, 2014**

Appellant, Liberty Place Retail Associates, L.P (The Shops), operates "the Shops at Liberty Place," a mall in Center City Philadelphia.  Appellees, members of the Israelite School of Universal Practical Knowledge (ISUPK), hold demonstrations on the public sidewalk outside of the main entrance to the mall.  In this appeal, we decide whether the trial court correctly denied The Shops' request for a permanent injunction against ISUPK's demonstrations.  Because the trial court did not err as a matter of law in concluding The Shops failed to meet its burden of proving that ISUPK's demonstrations are a trespass or private nuisance, we affirm.

The Shops at Liberty Place is part of a large complex of twin skyscrapers on the city block bordered by 16th, Chestnut, 17th, and Market

Streets in Philadelphia. N.T., 7/15/13, at 30-33. The Shops has 50 to 60 retailers, including dining facilities, commercial stores, service businesses, and an 850-seat food court. *Id.* There are five different entrances to The Shops, and the entrance at the corner of 16th and Chestnut Streets, where ISUPK holds its demonstrations, is the busiest. *Id.* About 15,000 people per day pass through all five entrances to the Shops. *Id.* at 100-101.

The Shops has several common areas that it owns and occasionally rents to vendors and nonprofit groups. *Id.* at 40-45. One of those areas is the entrance at 16th and Chestnut Streets, which includes an 800 square-foot "setback space." *Id.* at 29-32. The sidewalk at that street corner varies in width from 15 feet where it runs up to the building to 23 feet near the corner. *Id.* at 40-45. The setback space is a desirable location for vendors' and nonprofit groups' product demonstrations and samplings, and events. *Id.* at 333-36. The fee for a for-profit business to rent the space is around $2,000.00. *Id.* at 47-53. There is no fee for nonprofit groups, but any group renting the setback space must have liability insurance and pay an additional fee to provide for extra security. *Id.*

ISUPK describes itself as a nonprofit faith-based organization founded to teach and minister to blacks, Hispanics, and Native Americans. N.T., 7/15/13, at 247. The Southern Poverty Law Center (SPLC) describes ISUPK as an extremist Hebrew Israelite organization, whose message includes hatred of people who are white, Asian, Jewish, female, gay, or also black but who do not embrace its "radical black separatist ideology." Trial Court Rule

1925(a) Opinion, at 2 (quoting the SPLC's website).[1]  ISUPK has been demonstrating in various places in Philadelphia for years.  ISUPK demonstrations are a recognizable sight to most people who live, work or visit Philadelphia, as well as to the departments of City government that issue permits and monitor street and sidewalk demonstrations.  *See* N.T., 5/23/13, at 20-21; N.T., 6/7/13, at 25-26; N.T., 7/15/13, at 54-55, 317-18; N.T., 7/19/13, at 6-10, 29, 60-61, 68, 77.

ISUPK has demonstrated at various places in Center City.  N.T., 7/15/13, at 250-58, 267-68.  Forced to move by construction, ISUPK decided to hold its "camps," its term for its demonstrations, at the corner of 16th and Chestnut Streets, on the sidewalk abutting The Shops' setback space.  *Id.* at 266-70.  Kory Travis, whose ISUPK name is General Mahayaman, picked the corner of 16th and Chestnut because of the juxtaposition of wealth and poverty.  *Id.*  He noted that a richer and middle-class clientele patronizes The Shops, while the sidewalks outside are frequented by the homeless and beggars.  Travis also believed ISUPK could

---

[1] Hebrew Israelites believe that African Americans are God's chosen people, the Hebrews.  SPCL, *History of Hebrew Israelism*, Intelligence Report No. 131 (Fall 2008), *available at* http://www.splcenter.org/get-informed/intelligence-report/browse-all-issues/2008/fall/ready-for-war/history-of-hebrew-israeli (last visited Aug. 22, 2014).  The SPLC considers ISUPK to be an extremist sub-sect.  *Id.*

reach the broadest audience possible at the corner of 16th and Chestnut. *Id.*

ISUPK held its first demonstration there on November 30, 2012. N.T., 7/15/13, at 54-55. From that date until the final day of hearings in the trial court, ISUPK held demonstrations nearly every week, and usually on Friday afternoons.

ISUPK originally located its members on the sidewalk outside of the setback space. Under the mistaken belief that it owned the sidewalk outside of its building, The Shops blocked it with yellow caution tape, in the hope ISUPK would move elsewhere. *Id.* at 136-37, 229-30. ISUPK did move, to The Shops' chagrin, onto The Shops' setback space. N.T. 5/23/13, at 21-25. ISUPK had been led to believe by the City that the setback space was part of the public sidewalk. *Id.* The trial court issued a preliminary injunction which prohibited ISUPK from using the setback space, but allowed it to return to the public sidewalk at 16th and Chestnut, subject to conditions imposed on the demonstrations.

ISUPK's "camps" proceed in the same manner. For about four hours starting in the afternoon, one or two ISUPK members stand on makeshift stage and project their messages by microphone or other amplification. N.T., 7/15/13, at 55, 72-73. The noise level of ISUPK's chanting, which is constant, was described as "quite loud," and The Shops' security director testified that he could hear the demonstrations a block away, at the corner of 17th and Chestnut. *Id.* at 55, 190-92. The Shops did not produce,

- 4 -

however, any non-subjective evidence regarding loudness. Philadelphia Code § 10-403 limits sound projection to 10 dB above background level as measured from the nearest occupied non-residential property. The director of the City's Office of Air Management Services testified that, in his six years as supervisor, only The Shops has complained about ISUPK's noise levels. N.T., 7/19/13, at 73, 78-80. He testified further that the Police Department's Civil Affairs Unit had never asked his office to take a measurement of the noise emanating from ISUPK's demonstrations. *Id.*

The other ISUPK members form a perimeter around the platform. N.T., 7/15/13, at 201-02. Surrounding the platform are signs and placards bearing ISUPK's message. The signs include messages about modern slavery in America, lynching, ISUPK's beliefs regarding the genealogy of the Twelve Tribes of Israel and how they correspond to modern ethnic groups, and pictures of bloody fetuses with messages denouncing abortion. *Id.* at 56; The Shops' Exhibits 11, 13. In addition, ISUPK members hand out fliers, sell merchandise, and solicit donations. N.T., 7/15/13, at 55, 244-45.

The content of ISUPK's message is considered to be noxious and offensive. Examples follow:

> We hate white people. We hate Chinese people. We hate everybody who's not on this sign. And guess what, I love [indiscernable] people on this sign. It justifies our hate for the people that's not on this sign. . . . May the white man die today. May the Chinese man die today. May the East Indian man die today.

* * *

- 5 -

All your sons is homosexuals. All your women becoming homosexual. And becoming whores.

* * *

To our whores. [Indiscernable.] The most I can say is you whores, you walk around with your head held so high but you got your little salary, you gonna spend a couple hours on 16th and Chestnut in a mall that was built, not designed for your taste, you got the Gallery and you broke, lady, come over here and spend your money on 16th and Chestnut. Let me tell you why, because the Lord said he don't want—they give gifts to our whores. They give gifts to whores. The Lord considers a black woman, Hispanic woman, Native American woman a whore, a disgusting filthy whore.

* * *

The scriptures say black woman, shut your damn mouth. That's what the scriptures say. Learn in silence. The scriptures say learn in silence. You understand? Shut your mouth[,] black woman. You understand? That's why we be [indiscernable], you understand? Keep going.

* * *

We'll be happy for it man. When we can take your little white children with them big heads man and them blond—and that blond hair, right, and the blue eyes and smashed they head against the walls man. I wanna catch one coming out the womb and rip him from his feet and take him and smash his head against the damn floor man. Your people did it to my people man. Your people did it to my people I can't wait to take one of them devil babies man and smash his damn head and I'ma stomp it man. I bought a new pair of boots I ain't never wore yet man. I'll save it to that day the Lord come back man. Y'all did it to our people. What's so strange about it? What so strange about it man? That we wanna get revenge for our ancestors. The white man wanted revenge for Bin Laden for blowing up the World Trade Center. The white man wanted revenge for that. Why can't we want revenge for our people man?

The Shops' Exhibits 115, 123, 125, 127, and 128.

Though ISUPK members now remain in the public sidewalk, they face The Shops when preaching. Onlookers gather on the public sidewalk and in the private setback area to engage or watch the demonstrations. *Id.* at 63-64. The number of people in the setback area ebbs and flows during the demonstrations, and can be from as little as four to as many as twenty people. *Id.* at 189-90. Some onlookers angrily engage ISUPK, and ISUPK responds in kind. *Id.* at 69-70, 189-92, 201. Other onlookers, passers-by, and employees of The Shops' tenants complain to The Shops' staff about ISUPK's demonstrations. *Id.* at 58-64.

Over the course of about 14 demonstrations, The Shops also received four email complaints from people, two of whom worked at businesses inside The Shops. *Id.* at 100-09. The Shops presented no data regarding how the ISUPK demonstrations affect the number of people who patronize The Shops, and presented no evidence regarding whether its tenants' sales are affected. *Id.* The Shops has allocated two extra security guards to the setback space, and has canceled or postponed several events scheduled to take place in the setback space during ISUPK's demonstrations.

Although the ISUPK demonstrations were described as hostile and not peaceful, it is undisputed that ISUPK has never been cited for violating the City Code, and none of its members has ever been arrested at an ISUPK demonstration. N.T., 7/19/13, at 58-62. Finally, ISUPK's demonstrations are too small to require a permit from the City, but ISUPK generally works

with the office that issues permits and with the Civil Affairs Unit of the Police Department. *Id.*

As mentioned above, The Shops filed suit against ISUPK, and successfully petitioned for a preliminary injunction imposing certain limits on the demonstrations, including barring ISUPK from occupying the setback space. After two days of hearings, the trial court denied The Shops' request for a permanent injunction, which if granted, would have prohibited ISUPK from demonstrating on the public sidewalk adjacent to 16th and Chestnut Streets. The trial court found that The Shops did not prove that ISUPK intended onlookers to trespass onto the setback space. It further found that The Shops failed to show that ISUPK demonstrations constitute a private nuisance. Finally, the trial court ruled that ISUPK demonstrations are protected by the First Amendment. This appeal followed.[2]

The Shops raises three questions for our review:

1. Did the trial court err in stating the law of trespass?
2. Did the trial court err in stating the law of [private] nuisance?
3. Did the trial court err in finding that the First Amendment is a defense to claims for trespass and nuisance?

Appellant's Brief, at 2-3.[3]

---

[2] The trial court's order was appealable as of right under Pa.R.A.P. 311(a)(4).

[3] By a *per curiam* order filed December 23, 2013, we granted ISUPK's counsel leave to withdraw. We also ordered ISUPK to respond within ten days regarding whether it was retaining new counsel. ISUPK did not respond
*(Footnote Continued Next Page)*

To be entitled to a permanent injunction, a party must establish a clear right to relief, and must have no adequate remedy at law, *i.e.*, damages will not compensate for the injury. *J.C. Ehrlich Co. v. Martin*, 979 A.2d 862, 864 (Pa. Super. 2009) (quoting *Pescto, Inc. v. Associated Prods., Inc.*, 880 A.2d 700, 710 (Pa. Super. 2005)). Unlike a preliminary injunction, a permanent injunction does not require proof of immediate irreparable harm. *Id.*

The grant or denial of a permanent injunction is a question of law. *Buffalo Township v. Jones*, 813 A.2d 659, 664 & n.4 (Pa. 2002). Regarding the trial court's legal determination, our standard of review is *de novo*, and our scope of review is plenary. *Id.*; *J.C. Ehrlich*, 979 A.2d at 864. As in all equity matters, however, we must accept the trial court's factual findings and give them the weight of a jury verdict where they are supported by competent evidence. *RESPA of Pa., Inc. v. Skillman*, 768 A.2d 335, 339 (Pa. Super. 2001), *abrogated on other grounds by Buffalo Township*, 813 A.2d at 664 n.4.[4]

_(Footnote Continued)_ _____

or file an appellee's brief. Consequently, it did not participate at oral argument.

[4] In *Buffalo Township*, our Supreme Court clarified that the appellate standard of review of decisions granting or denying a permanent injunction is for an error of law. *Buffalo Township*, 813 A.2d at 664 n.4. The court, however, did not discard the longstanding principle that an appellate court must generally defer to a trial court's factual findings. *See id.* at 647 n.7 ("In reviewing fact-laden decisions, an appellate court displays a high level of deference to the trial court as the fact finder."). Like the Shops here, the

*(Footnote Continued Next Page)*

The first issue is whether ISUPK's demonstrations constitute a trespass. ISUPK members themselves have not entered The Shops' setback space since the trial court entered the preliminary injunction prohibiting them from doing so. The Shops argues that ISUPK is liable in trespass because onlookers gather to watch ISUPK inside The Shops' setback space. The trial court ruled The Shops needed to prove that ISUPK intended for the third parties to gather on The Shops' property, and that it failed to do so. Trial Court Rule 1925(a) Opinion, 11/7/13, at 7. On appeal, The Shops argues that ISUPK is liable because it knew of the likelihood of onlookers gathering inside the setback space. We disagree.

Under Pennsylvania law,

One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he **intentionally**

(a) enters land in the possession of the other, **or causes** a thing or **a third person to do so**, or

(b) remains on the land, or

(c) fails to remove from the land a thing which he is under a duty to remove.

Restatement (Second) of Torts § 158 (1965) (emphasis added), *quoted in*

**Gilbert v. Synagro Cent., LLC**, 90 A.3d 37, 52 (Pa. Super. 2014).[5]   "The

_____
*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯

parties in **Buffalo Township** did not dispute the trial court's factual findings. **Id.** Therefore, we review here only pure questions of law.

[5] Our Supreme Court has never adopted—or cited—Restatement (Second) § 158. In **Kopka v. Bell Telephone Co.**, 91 A.2d 232, 235 (Pa. 1952), the
*(Footnote Continued Next Page)*

word 'intent' is used throughout the Restatement [(Second) of Torts] to denote that the actor desires to cause consequences of his act, or that he believes that the consequences **are substantially certain to result from it**." Restatement (Second) of Torts § 8A (emphasis added).

In the context of a trespass, "intent" refers to intent to be on the land. **Kopka**, 91 A.2d at 235.

> It is, therefore, immaterial whether or not [the actor] honestly and reasonably believes that the land is his own, or that he has the consent of the possessor or of a third person having power to give consent on his behalf, or that he has a mistaken belief that he has some other privilege to enter.

**Id.** (quoting Restatement (First) of Torts § 158 cmt. i). Stated another way, a person is a trespasser merely by intending to be where he is. The intent to be on another's land is not required to prove trespass. So, for example, when ISUPK located its demonstrations inside the setback space, it was liable for trespass, even though it apparently believed in good faith that the setback space was public property.

---
*(Footnote Continued)*

court adopted Restatement (First) of Torts § 158 (1934). Sections 158 of the First and Second Restatements, however, are identical in substance. **See** Restatement (Second) of Torts § 158 Reporter's Notes. In addition, this Court has cited with approval the Restatement (Second) § 158. **See, e.g.**, **Gilbert**, 90 A.3d at 52; **Smith v. King's Grant Condo.**, 614 A.2d 261, 267 n.7 (Pa. Super. 1992), *aff'd*, 640 A.2d 1276 (Pa. 1994). Finally, we have utilized provisions of the Restatement (Second) that are substantively similar to corresponding provisions of the Restatement (First) previously adopted by our Supreme Court. **See, e.g., Kembel v. Schlegel**, 478 A.2d 11, 14 n.3 (Pa. Super. 1984).

Additionally, one who intentionally causes a third person to enter another's land is liable for trespass:

> If, by any act of his, the actor intentionally causes a third person to enter land, he is as fully liable as though he himself enters. Thus, if the actor has commanded or requested a third person to enter land in the possession of another, the actor is responsible for the third person's entry if it be a trespass. This is an application of the general principle that one who intentionally causes another to do an act is under the same liability as though he himself does the act in question. So too, one who by physical duress causes a third person to go upon the land of another or who carries the third person there against his will is liable as a trespasser, although the third person may not be liable.

Restatement (Second) of Torts § 158 cmt. j. A person who "authorizes or directs" another to trespass "is himself liable as a trespasser to the same extent as if the trespass were committed directly by himself." *Kopka*, 91 A.2d at 235. "[T]his is true even though the authority or direction be given to one who is an independent contractor." *Id.*

The Shops argues that "[i]t was only necessary to show that the Israelites knew that crowds were likely to gather in the setback space." Appellant's Brief, at 22. The Shops cites no persuasive authority to support its proposition, and its argument understates the quantum of proof necessary. As noted above, The Shops needed to prove that ISUPK knew the onlookers' entry was **substantially certain**.

In *Kopka*, the defendant clearly intended to cause the third party to trespass. The defendant (a telephone company) had an agreement with the third party to dig holes for telephone wires and to erect the wires. *Kopka*,

91 A.2d at 233. The defendant had directed the third party where to dig holes and erect the telephone poles, including over the plaintiff's land for which the defendant lacked an easement. *Id.* On those facts, our Supreme Court found the defendant liable even though it did not enter the plaintiff's land. *Id.* at 234. *Kopka* is thus distinguishable.[6]

Furthermore, we find unpersuasive The Shops' citation of Restatement (Second) of Torts § 158 cmt. i. (concerning liability for trespass of a thing). Although the same legal standard (intent) applies to trespasses of things and third persons, it is easier to infer the necessary intent to cause trespass of things, as opposed to persons. Piles of sand, dirt, and biosolids are inanimate objects. They go where they are placed and answer only to the laws of physics and gravity. *Cf. Gilbert*, 90 A.3d at 52 (concerning trespass for, *inter alia*, placing a pile of biosolids on an extreme slope next to the plaintiffs' land). People, on the other hand, may choose to ignore directions or commands. Thus, it is less certain—and hence less probative of intent— that people gather on private property next to the stage of an attention-seeker, absent any affirmative direction or coercive action to cause the people to gather on the private property.

---

[6] *Gay v. Taylor*, 9 Pa. D. & C. 31 (C.P. Chester 1932), also cited by The Shops, does not apply. In that case, the trial court did not decide whether the defendants were liable in trespass. *Id.* at 41 (holding the defendants were liable in nuisance and, for that reason, it was "not necessary to decide the question of trespass raised").

Indeed, cases concerning liability for causing a third person to trespass have been found where (1) the defendant affirmatively directs the third person to enter the plaintiff's land; or (2) the defendant actually causes the third party to enter the plaintiff's land by duress. **Kopka** is an example of the first category. Illustration 1 of the Restatement (Second) § 158 ("A, against B's will, forcibly carries B upon the land of C. A is a trespasser; B is not."), is an example of the second category. The Shops has cited no authority, and we have found none, where a defendant who intended to attract a crowd—but did not direct or force the crowd to gather in a specific place—was liable for the resulting trespass when people gathered in that place.

To be entitled to a permanent injunction against trespass, The Shops needed to prove that ISUPK intended, *i.e.*, knew of a substantial certainty, that onlookers would remain in the setback area. Mere knowledge of likelihood was legally insufficient proof. Turning to the facts, we are bound by the trial court's finding that The Shops failed to prove ISUPK intended to cause a trespass.[7] Therefore, we must reject The Shops' argument to the contrary.

---

[7] Even though another fact-finder may have found differently, our scope and standard of review do not allow us to substitute our judgment for the trial court's factual findings where they are supported by the record. **Buffalo Township**, 813 A.2d at 664 n.7; **see also RESPA of Pa., Inc.**, 768 A.2d at 339 (stating that factual findings are given the weight of a jury verdict "the weight of a jury verdict where supported by competent evidence").

In sum, the trial court did not err as a matter of law in stating the law of trespass. Therefore, the trial court correctly rejected the Shops' trespass claim.

We turn to The Shops' second argument that the trial court erred in stating the law of private nuisance. The Shops contends the trial court erred in limiting its analysis to the noise level of ISUPK's demonstrations and pecuniary harm. The Shops argues that a host of other factors can constitute a private nuisance, including the gathering of crowds in the setback space.

> The term nuisance signifies in law such a use of property or such a course of conduct as, irrespective of actual trespass against others or of malicious or actual criminal intent, transgresses the just restrictions upon use or conduct which the proximity of other persons or property in civilized communities imposes upon what would otherwise be rightful freedom.

*Cassel-Hess v. Hoffer*, 44 A.3d 80, 85 (Pa. Super. 2012) (quoting *Kramer v. Pittsburgh Coal Co.*, 19 A.2d 362, 363 (Pa. 1941)); *see also* Restatement (Second) of Torts § 821D. Unlike a trespass, which is inherently unlawful, private nuisance flows from the consequences of an otherwise lawful act. *Cassel-Hess v. Hoffer*, 44 A.3d at 86.

This Court has ruled that the Restatement (Second) of Torts § 822 properly states the law of private nuisance.[8] ***Kembel***, 478 A.2d at 14-15. That section states:

> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
>
> (a) intentional and unreasonable, or
>
> (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

Restatement (Second) of Torts § 822. In other words, lawful activities may be enjoined where they unreasonably interfere with another's property rights. ***See, e.g., Firth v. Scherzberg***, 77 A.2d 443, 446-47 (Pa. 1951) (noise and light from nighttime operation of trucking business); ***Beecher v. Dull***, 143 A. 498, 499 (Pa. 1928) (dynamite blasting in limestone quarry); ***Evans v. Moffat***, 160 A.2d 465, 468-69 (Pa. Super. 1960) (noxious gasses emanating from burning culm banks).

> In the context of a private nuisance, "unreasonable" means:
>
> (a) the gravity of the harm outweighs the utility of the actor's conduct, or

---

[8] In ***Waschak v. Moffat***, 109 A.2d 310, 317 (Pa. 1954), our Supreme Court adopted Restatement (First) of Torts § 822. ***See Youst v. Keck's Food Serv., Inc.***, 94 A.3d 1057, 1072 n.11 (Pa. Super. 2014) (noting that the relevant provisions of the First and Second Restatements are the same).

(b) the harm caused by the conduct is serious and the financial burden of compensating for this and similar harm to others would not make the continuation of the conduct [in]feasible.

Restatement (Second) of Torts § 826, *quoted in* **Youst**, 94 A.3d at 1072-73.[9]

We hold that the trial court correctly stated the law of nuisance. The Shops presents no persuasive authority to the contrary. The Shops cites **Gay** for the proposition that "collecting of crowds alone" can constitute a nuisance. Appellant's Brief at 27 (quoting **Gay**, 19 Pa. D. & C. at 39). The Shops quotes **Gay** out of context. In full relevant part, **Gay** reads as follows:

It has been held that a "clear case of nuisance is established in the collecting of the crowd alone"; **but under somewhat different facts than are here presented**. However, it cannot be doubted that the overrunning of the Gay property by the crowds under consideration and the use by members thereof of

_____

[9] Clause (a) regarding unreasonableness is self-explanatory. Clause (b):

recognizes that "[i]t may sometimes be reasonable to operate an important activity if payment is made for the harm it is causing, but unreasonable to continue it without paying . . . . The action for damages does not seek to stop the activity; it seeks instead to place on the activity the cost of compensating for the harm it causes."

**Smith v. Jersey Cent. Power & Light Co.**, 24 A.3d 300, 309 (N.J. Super. App. Div. 2011) (quoting Restatement (Second) of Torts § 826 cmt. f.); **accord Hughes v. Emerald Mines Corp.**, 450 A.2d 1, 5-7 (Pa. Super. 1982) (holding that damages for nuisance against coal mining company were proper where company failed "to show that the damage inflicted was 'not avoidable at all' or that it was avoidable 'only at such expense as would be practically prohibitory'").

the barn for "toilet facilities" and of the driveway for parking and turning cars and the requests to use the telephone testified to are most annoying and disturbing.

\* \* \*

A careful consideration of the testimony in this case leads to the conclusion that the elements of nuisance above referred to are established and that the operation of the airport is responsible for the noise, the dust, the crowds, and the apprehension of danger. We believe that each one is most objectionable, especially to persons who have sought the peace and quiet of the farming and agricultural community under consideration to establish their homes and bring up their children. **Whether any of these elements taken alone would constitute a nuisance it is not necessary to determine**. We have no doubt, however, that, taking them all together, they do constitute a nuisance . . . .

*Gay*, 19 Pa. D. & C. at 39 (quoting *Walker v. Brewster*, (1867) L.R. Eq. Cas. 25, 34 (Ch.)) (emphasis added). Thus, the court in *Gay* did not find that the gathering of crowds alone was sufficient evidence of a nuisance.[10]

---

[10] The Shops also cites *Kershes v. Verbicus*, 36 Pa. D. & C. 499, 505 (C.P. Phila. 1939), for the proposition that abusive, slanderous language may be enjoined as a nuisance. The Shops does not state how *Kershes* applies here. The plaintiff in that case was subjected to slanderous abuse in her private residence, and no evidence exists that ISUPK's demonstrations constitute slander. Moreover, this Court is not bound to accept *Kershes* as persuasive authority.

Additionally, *Reid v. Brodsky*, 156 A.2d 334 (Pa. 1959), is inapposite. The court in *Reid* enjoined operation of a bar in a residential district of Philadelphia that constituted a nuisance based on its attraction of vulgar, immoral, and boisterous patrons; the use of areas outside of the bar for sexual escapades and street brawls; and the noise caused by the patrons and the bar's jukebox. *Id.* at 338-39.

Moreover, *Gay* is factually distinguishable. The plaintiffs in *Gay* owned a country estate, a farm, and a sanitarium for tuberculosis patients in a then-rural section of Chester County—not a commercial shopping mall in Center City Philadelphia. Unlike the plaintiffs' properties in *Gay*, The Shops is designed to attract customers. In other words, the gathering of people in the setback area alone cannot be a nuisance to The Shops, which **desires** customers and potential customers to be in the setback area, albeit for its business purposes. Thus, the setback area is different in kind than the areas in *Gay*, which were private facilities not designed to attract people. In sum, the trial court properly stated the law of nuisance, and held that The Shops failed to meet its burden of proving that ISUPK's demonstrations constitute a private nuisance.

We hold that the trial court did not err in stating the law of trespass and nuisance, or in ruling that The Shops failed to prove either claim. We need not address the trial court's holding that the First Amendment provides a defense to these claims. *See Commonwealth v. Wilson*, 67 A.3d 736, 741 (Pa. 2013) (noting courts, if possible, attempt to dispose of cases on non-constitutional grounds). Because The Shops failed to meet its burdens of proof and persuasion, the trial court did not err in concluding that the Shops was not entitled to a permanent injunction.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/14/2014</u>