J-A35040-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| FIRST NATIONAL BANK OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TIMOTHY C. NAGLE, | : | |
| | : | |
| Appellant | : | No. 441 WDA 2015 |

Appeal from the Order dated February 19, 2015
in the Court of Common Pleas of Blair County,
Civil Division, No. 2014 GN 1855

BEFORE:  BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                **FILED APRIL 08, 2016**

Timothy C. Nagle ("Nagle") appeals from the Order entering judgment on the pleadings against him and in favor of First National Bank of Pennsylvania ("First National").   We reverse and remand for further proceedings.

The trial court summarized the relevant history underlying the instant appeal as follows:

> [] First National [] is a consumer banking business that provides and services commercial loans.  [First National] hired [] Nagle [] as a commercial lender.   [Nagle] executed a letter agreement ("Non-Solicitation Agreement") on April 23, 2010[,] to participate in [First National's] Performance Compensation program; this program offered [Nagle] financial benefits related to his compensation in exchange for [Nagle's] agreement to the [Non-Solicitation Agreement] at issue.  This covenant provided:
>
> > While you are an employee of the company, you will not, without the company's prior written consent, compete with any business of the company or any of its affiliates or subsidiaries.   Additionally, during the term of your

employment, and during the one[-]year period immediately following termination of your employment for any reason, including resignation by you or an involuntary termination of your employment by the company, you will not engage in any acts which would be considered improper solicitation under this letter agreement. For the purposes of this letter agreement, improper solicitation includes, but is not limited to: directly or indirectly soliciting or selling to any customer of the company or its affiliates any product or service offered by the company or its affiliates; employing or assisting in employing any present employee of the company or its affiliates; and directly or indirectly requesting or advising any customer or supplier of the company to withhold, curtail or cancel business with the company or its affiliates. A customer is any person or entity with whom you transacted business or became aware of during your employment with the company.

Ex. "1" to [First National's] Complaint.

[Nagle] was terminated for improper conduct on March 4, 2014[,] and was prohibited from soliciting [First National's] customers until after March 4, 2015. [First National] filed a Complaint and Petition for Preliminary Injunction[,] on July 7, 2014[,] against [Nagle] alleging that [Nagle] violated the Non-Solicitation Agreement by improperly contacting and soliciting [First National's] customers after his termination and prior to March 5, 2015. [First National sought] breach of contract damages and injunctive relief by enjoining [Nagle] from contacting or communicating with [First National's] customers or business contacts[,] including the Lytle Group; Grannas Brothers; BCS Construction; Greenland ENT, LLC; Delozier Brothers; Rodney Metzler; Lytle EAP Partners/The Lytle Group; Mid-Atlantic Municipal; and Lifestyle Support Properties, Incorporated. In Response, [Nagle] admitted that [he had] contacted or was contacted by the above customers; however, [Nagle] maintained that the above customers were his pre-existing customers[,] and no violation of the Non-Solicitation Agreement had occurred.

A hearing on [First National's] Petition was initially scheduled for July 25, 2014; this hearing was continued[,] as

[First National] intended to file the instant Motion for Judgment on the Pleadings ….

Trial Court Opinion, 2/25/15, at 1-2.

First National filed a Motion for Judgment on the Pleadings and a brief in support of its Motion. Nagle filed a brief in opposition to First National's Motion. After oral argument, the trial court entered an Order granting First National's Motion for Judgment on the Pleadings. The trial court ordered that Nagle "is enjoined from continuing to violate the terms of the Non-Solicitation Agreement by contacting [First National's] local customer base in Blair County, Pennsylvania." Trial Court Order, 2/25/15, at ¶ 2. The trial court further granted counsel "twenty days … to request a hearing on [First National's] claim for damages and request for an extension of the one-year non-solicitation period." *Id.*, ¶ 3. Thereafter, Nagle filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of Matters Complained of on Appeal.

Nagle now presents the following issues for our review:

I. WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW BY ENJOINING [NAGLE] UNDER A RESTRICTIVE COVENANT FROM DEALING WITH BANKING CUSTOMERS HE HAD ACQUIRED PRIOR TO HIS EMPLOYMENT WITH [FIRST NATIONAL]?

II. WHETHER THE [TRIAL] COURT ERRED AS A MATTER OF LAW BY ENTERING JUDGMENT ON THE PLEADINGS AND FAILING TO PROVIDE [NAGLE] WITH A HEARING ON [FIRST NATIONAL'S] REQUEST FOR INJUNCTIVE RELIEF?

Brief for Appellant at 4.

Our review of the grant of a motion for judgment on the pleadings "is limited to whether the trial court committed an error of law or whether unresolved questions of material fact remained. Because the question of whether judgment on the pleadings was proper is a question of law, our scope of review is plenary." *Grimes v. Enter. Leasing Co. of Phila., LLC*, 105 A.3d 1188, 1192-93 (Pa. 2014).

By its Order, the trial court permanently enjoined Nagle from violating the Non-Solicitation Agreement.

> To be entitled to a permanent injunction, a party must establish a clear right to relief, and must have no adequate remedy at law, *i.e.*, damages will not compensate for the injury. Unlike a preliminary injunction, a permanent injunction does not require proof of immediate irreparable harm.
>
> The grant or denial of a permanent injunction is a question of law. Regarding the trial court's legal determination, our standard of review is *de novo*, and our scope of review is plenary. As in all equity matters, however, we must accept the trial court's factual findings and give them the weight of a jury verdict where they are supported by competent evidence.

*Liberty Place Retail Assocs., L.P. v. Israelite Sch. of Universal Practical Knowledge*, 102 A.3d 501, 505-06 (Pa. Super. 2014) (citations and footnote omitted). Under this standard and scope of review, we address Nagle's claims.

Nagle first claims that the trial court improperly enjoined him from engaging in business with customers whom he had developed prior to his employment with First National. Brief for Appellant at 8. According to Nagle, "[t]he question here is whether [First National] has a legitimate

- 4 -

interest[,] under the concept of good will[,] in customers [Nagle] secured prior to his employment with [First National]." *Id.* Relying on our Supreme Court's discussion in *Hess v. Gebhard & Co.*, 808 A.2d 912, 917 (Pa. 2002), Nagle asserts that First National has no protectable business interest in his pre-existing customers. Brief for Appellant at 8, 9. Nagle asserts that, although *Hess* had involved the sale of a sole proprietorship business, its discussion is instructive, as restrictive covenants in connection with employment are subject to a "more stringent test of reasonableness." *Id.* at 9 (quoting *Hayes v. Altman*, 266 A.2d 269, 271 (Pa. 1970)). According to Nagle, First National's interpretation of the Non-Solicitation Agreement cannot be applied, as prohibiting Nagle's solicitation of his pre-existing customers constitutes an unreasonably broad application of that agreement. Brief for Appellant at 9-10.

"Pennsylvania courts have historically viewed such covenants as contracts in restraint of trade that prevent a former employee from earning a livelihood, and, therefore, have disfavored such provisions in the law. *Socko v. Mid-Atlantic Sys. of CPA, Inc.*, 126 A.3d 1266, 1273-74 (Pa. 2015). Consequently, covenants not to compete are strictly construed against the employer. *All-Pak. Inc. v. Johnston*, 694 A.2d 347, 351 (Pa. Super. 1997).

Notwithstanding, our Supreme Court has recognized an employer's right to protect, by a covenant not to compete, its interest in customer relationships acquired through the efforts of its employees:

> In almost all commercial enterprises … contact with customers or clientele is a particularly sensitive aspect of the business…. In most businesses … as the size of the operation increases, selling and servicing activities must be at least in part decentralized and entrusted to employees whose financial interest in the business is limited to their compensation. The employer's sole or major contact with buyers is through these agents and the success or failure of the firm depends in part on their effectiveness…. The possibility is present that the customer will regard, or come to regard, the attributes of the employee as more important in his business dealings than any special qualities of the product or service of the employer, especially if the product is not greatly differentiated from others which are available. Thus, some customers may be persuaded, or even be very willing, to abandon the employer should the employee move to a competing organization or leave to set up a business of his own….
>
> The employer's point of view is that the company's clientele is an asset of value which has been acquired by virtue of effort and expenditures over a period of time, and which should be protected as a form of property. Certainly, the argument goes, the employee should have no equity in the custom[ers] which the business had developed before he was employed. Similarly, under traditional agency concepts, any new business or improvement in customer relations attributable to him during his employment is for the sole benefit of the principal. This is what he is being paid to do. When he leaves the company he should no more be permitted to try to divert to his own benefit the product of his employment than to abscond with the company's cash-box. Blake, Employee Agreements Not to Compete, 73 Harv.L.Rev. 625, 653-54 (1960).

*John G. Bryant Co. v. Sling Testing & Repair, Inc.*, 369 A.2d 1164, 1167-68 (Pa. 1977) (footnotes and some quotation marks omitted). Thus, while Pennsylvania law looks with disfavor upon restrictive covenants, such covenants have been enforced if (1) they are incident to an employment relationship between the parties; (2) they are supported by adequate consideration; (3) the restrictions imposed by the covenant are reasonably necessary for the protection of legitimate interests of the employer; and (4) the restrictions imposed are reasonably limited in duration and geographic extent. *Hess*, 808 A.2d at 917; *see also Piercing Pagoda, Inc. v. Hoffner*, 351 A.2d 207, 210 (Pa. 1976).

Pennsylvania courts have recognized that customer goodwill is a legitimate interest protectable through a general restrictive covenant. *Synthes USA Sales, LLC v. Harrison*, 83 A.3d 242, 250 (Pa. Super. 2013).

> The interest protected under the umbrella of goodwill is a business's positive reputation. *Hess*, *supra* at 165, 808 A.2d at 922 (citing *Solomon v. Solomon*, 531 Pa. 113, 611 A.2d 686, 692 (1992)). "*Goodwill represents a preexisting relationship arising from a continuous course of business which is expected to continue indefinitely.*" *Butler v. Butler*, 541 Pa. 364, 372 n.9, 663 A.2d 148, 152 n. 9 (1995). A business's goodwill is considered a protectable interest even when the goodwill has been acquired through the efforts of an employee. *Sidco Paper Co. v. Aaron*, 465 Pa. 586, 591-93, 351 A.2d 250, 252-53 (1976).

*Wellspan Health v. Bayliss*, 869 A.2d 990, 997 (Pa. Super. 2005) (emphasis added). The court must examine and balance the employer's legitimate business interest, the "individual's right to work, the public's right

to unrestrained competition, and the right to contract … in determining whether to enforce a restrictive covenant." **Hess**, 808 A.2d at 917 (citation omitted).

At issue in this case is whether barring Nagle from contacting his pre-existing customers is reasonably necessary for the protection of First National. **See id.** In its Complaint, First National averred that after his termination, Nagle secured new employment at another bank. Complaint and Petition for Preliminary Injunction, ¶ 8. First National further averred that Nagle "improperly contacted and solicited customers of [First National] as defined within the April 23, 2010 Non-Solicitation Agreement …." **Id.** In his Answer, Nagle countered that "[t]hose customers of [First National] with whom [Nagle] has had contact since his termination were customers of [Nagle] prior to his employment with [First National] when [Nagle] worked for other banks." Answer, ¶ 8. Nagle further asserted, "[Nagle] does not believe [First National] secured the rights to his [] pre-existing customer relationships under the Non-Solicitation Agreement." **Id.**

Keeping in mind that Pennsylvania law disfavors restrictive covenants, we conclude that it would be unreasonable to extend the Non-Solicitation Agreement to include personal customers of Nagle, who came to First National solely to avail themselves of Nagle's services and only as a result of his own independent recruitment efforts—efforts which First National neither subsidized nor financially supported. **See Hess**, 808 A.2d at 917 (requiring

that to be enforceable, the restrictions imposed by a restrictive covenant must, *inter alia*, be reasonably necessary for the protection of legitimate interests of the employer). Our review of the existing record discloses no evidentiary record upon which to render a decision as to the status of the customers at issue. The trial court conducted no evidentiary hearings prior to entering judgment on the pleadings in favor of First National. This, we conclude, constituted error.

As a matter of law, the pleadings do not demonstrate that First National has a legitimate business interest in customers secured by Nagle prior to his employment with First National. Further, the pleadings do not establish, as a matter of law, that First National's proposed interpretation of the Non-Solicitation Agreement is reasonable to protect its legitimate business interests.[1] For this reason, we reverse the Order granting judgment on the pleadings in favor of First National, and remand for further proceedings.[2]

---

[1] At a minimum, there exists an issue of fact as to whether First National (or Nagle) had a "pre-existing relationship arising from a continuous course of business which is expected to continue indefinitely." **Wellspan Health**, 869 A.2d at 997 (quoting **Butler**, 663 A.2d at 152 n.9).

[2] On remand, it may be necessary for the trial court to reform the Non-Solicitation Agreement. "It is well-established in Pennsylvania that a court of equity has the authority to reform a non-competition covenant in order to enforce only those provisions that are reasonably necessary for the protection of the employer." **Wellspan Health**, 869 A.2d at 996 n.2.

In his second claim, Nagle asserts that the trial court erred by failing to provide him with a hearing on First National's request for injunctive relief. Brief for Appellant at 10. Nagle contends that due process requires the grant of a full evidentiary hearing prior to issuing a permanent injunction. *Id.* Nagle further contends that the circumstances in this case require a hearing to determine whether "it was the Bank or [Nagle] who had ' … a pre-existing relationship arising from a continuous course of business' worthy of protection." *Id.* (quoting **Butler**, 663 A.2d at 152 n.9).

As set forth above, we reverse the Order of the trial court, and remand for further proceedings, as there remain outstanding issues of material fact.[3] As such, we need not address whether the trial court deprived Nagle of his right to due process.

Order reversed; case remanded for further proceedings consistent with this Memorandum; Superior Court jurisdiction relinquished.

---

[3] In addition, regardless of whether Nagle had violated the Non-Solicitation Agreement, there is no evidentiary record establishing the remaining elements necessary for the grant of a permanent injunction. **See Liberty Place Retail Assocs.**, 102 A.3d at 505-06 (stating that a party seeking a permanent injunction "must establish a clear right to relief, and must have no adequate remedy at law, *i.e.*, damages will not compensate for the injury.").

J-A35040-15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/8/2016